UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA, :

- against - : 26 CR 143 (MKB)

PIERRE LEE, :

Defendant. :

----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PIERRE LEE'S MOTIONS TO DISMISS, SUPPRESS EVIDENCE, AND FOR SEPARATE TRIALS**

Michael K. Schneider
Falon Rainer
FEDERAL DEFENDERS OF NEW YORK
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 11231
Tel.: (718) 330-1200
Email: michael_schneider@fd.org
falon_rainer@fd.org

*Attorneys for Defendant*

TO: JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, N.Y. 11201
By: Assistant U.S. Attorney Joseph P. Klemme
Assistant U.S. Attorney Brachah Goykadosh

CC: Clerk of the Court (by ECF)
Mr. Pierre Lee (by hand)

## INTRODUCTION

Pierre Lee moves for orders:

1. Dismissing Count Four of the indictment, charging use of a firearm during a crime of violence, for failure to state an offense.
2. Suppressing statements allegedly made to law enforcement after his arrest on April 24, 2026.
3. That Counts One and Two be tried separately from Counts Three, Four, and Five.
4. Dismissing Count Five of the indictment.
5. Granting such other and further relief as the Court may deem just and proper.

## BACKGROUND[1]

Pierre Lee is charged by indictment with one count of bank robbery (Count One), two counts of attempted bank robbery (Counts Two and Three), one count of use of a firearm during a crime of violence (Count Four), and one count of illegal possession of a firearm and ammunition (Count Five). (Dkt. No. 7). The charges relate to three separate incidents that occurred on April 21, 22, and 24, 2026. The government alleged that, during each incident, Mr. Lee entered a bank and provided a handwritten note to the teller requesting money. During the April 21 incident, the government alleges that the teller provided cash to Mr. Lee. On April 22 and 24, the tellers refused to provide any money. During each of the three separate incidents, the government concedes that Mr. Lee walked out of the bank without displaying or brandishing any weapon or assaulting anyone.

In the minutes after the April 24, 2026 attempted bank robbery charged in Count Three, NYPD officers arrested Mr. Lee as he was walking out of a subway station. Mr. Lee was carrying

[1] The facts noted in this section are based on all the documents filed on the docket as well as discovery received from the government.

a shopping bag when the officers seized him, and an officer took the bag from him. Later that day at the stationhouse, while NYPD officers were invoicing property allegedly taken from Mr. Lee following his arrest, an officer discovered a firearm in the bottom of the shopping bag that had been taken from Mr. Lee at the subway station.

On April 24, while being held at the stationhouse following his arrest, NYPD officers or detectives attempted to interrogate Mr. Lee. After listening to the officer read Miranda rights to him, Mr. Lee asked to speak to an attorney. The officers then terminated the interview.

The next day, Mr. Lee made his initial appearance in Kings County Criminal Court in connection with the attempted robberies on April 21 and 22. He was charged with robbery and other crimes. At the initial appearance on April 25, 2026, the local court appointed a public defender from the Legal Aid Society to represent him. This attorney remained as counsel to Mr. Lee until at least June 16, 2026, when the local prosecutor moved to dismiss the charges. On April 25, the local judge ruled that Mr. Lee would remain in custody, and he was held by the New York City Department of Corrections at Rikers Island.

One week later, on May 1, 2026, federal agents arrived at Rikers Island and took custody of Mr. Lee. They placed him in a car, intending to take him to the federal courthouse in Brooklyn to appear on a complaint charging him with attempted bank robbery (Dkt. No. 1). While Mr. Lee was in the custody of the federal agents, one of them asked him: “What’s your deal, pal?” In response, the government alleges that Mr. Lee said: “I just walked into the bank and passed them a note.” Mr. Lee’s previously appointed public defender was not present during this interview.

## ARGUMENT

**1. This Court must dismiss Count Four because attempted bank robbery under 18 U.S.C. § 2113(a) is not a crime of violence under 18 U.S.C. § 924(c)(3)(A)'s Elements Clause.**

**A. Applicable Law**

A federal felony offense qualifies as a crime of violence under Section 924(c) if it "has an as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). This is known as the statute's "elements" or "force" clause. United States v. Ullah, 173 F.4th 399 (2d Cir 2026). After finding the residual clause of § 924(c)(3)(B) void for vagueness, the Supreme Court held that the elements clause stands alone. United States v. Davis, 588 U.S. 445 (2019). Accordingly, a predicate offense qualifies as a crime of violence only if use of force is an element of the offense. Nicholson v. United States,78 F.4th 870 (6th Cir. 2023).

To determine whether an offense is a crime of violence under the elements clause, courts employ the categorical approach. Ullah, 173 F.4th 399 (2d Cir. 2026) Under that approach, courts must identify the minimum conduct necessary for conviction under the relevant statue, looking only to the statutory definitions – the *elements* of the offense. United States v. Medunjanin, 99 F.4th 129, 134 (2d Circ. 2024) (quoting United States v. Pastore, 83 F.4th 113, 118 (2d Cir. 2023)). Courts then must identify the minimum conduct necessary for conviction under a particular statute, looking only to the statutory definitions. United States v. Davis, 74 F.4th 50 (2d Cir. 2023).

The categorial approach precludes an inquiry into how any particular defendant may commit or has committed the crime. United States v. Taylor, 596 U.S. 845 (2022). "The only relevant question is whether the federal felony at issue always requires the government to

prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." Id at 850. "In other words, it is not enough that the evidence in the case shows that the defendant committed the charged predicate crime in a way that involved the use of force . . . Instead, the predicate crime must be one whose elements are defined in such a way that the crime must, 'in every instance, by its very definition, involve the use of force'" against the person or property of another. United States v. Capers, 20 F.4th 105, 117 (2d Cir. 2021) (quoting United States v. Martinez, 991 F.3d 347, 353 (2d Cir. 2021)). If the statute defining the predicate offense "'criminalizes any conduct that would not fall within the scope of . . . the force clause'" then that statute "'is not categorically a crime of violence and cannot serve as a predicate offense' for purposes of 18 USC § 924(c)." United States v. Davis, 74 F.4th 50, 53 (2d Cir. 2023) (quoting United States v. Jones, 878 F.3d 10, 16 (2d Cir. 2017)). "[A] statute that 'sweeps more broadly than the [elements] clause is not a categorical match and cannot count as a Section 924(c) predicate." Id. (quoting Descamps v. United States, 570 U.S. 254, 261 (2013)).

The first step in identifying the minimum criminal conduct covered by a statute is determining whether a statute is "divisible". Divisible statutes list elements in the alternative and thereby define multiple crimes. Ullah, 173 F.4th 399 (2d Cir. 2026). A statute listing "multiple elements disjunctively" is more likely to be divisible, while a statute that "enumerates various factual means of committing a single element" is likely indivisible. Mathis v. United States, 579 U.S.500, 506 (2016); accord Harbin v. Session, 860 F.3d 58, 64 (2d Cir. 2017) (noting that indivisible statutes "spell out various factual ways, or means, of committing some component of the offense").

When a statute is divisible, courts apply a modified categorical approach wherein they may determine what crime, with what elements, a defendant is charged with. Id. at 505-506. The

court then returns to the categorical analysis and compares the elements of the charged predicate offense with §924(c)(3)(A)'s definition of a crime of violence. Ullah, 173 F.4th 399 (2d Cir. 2026).

**B. Section 2213(a)'s first paragraph is divisible from its second paragraph, but not within itself.**

The divisibility of 18 U.S.C. § 2113(a) was presented in United Staes v. Moore, 916 F.3d 231 (2d Cir. 2109), which addressed whether the 2016 version of the statute fit the generic definition of robbery (and thus didn't analyze whether it required the use of force). The parties in that case agreed that the statute was divisible, and the Circuit agreed as well. It approvingly cited the Third Circuit's reasoning that the statute was divisible "because it contains two separate paragraphs, each containing a separate version of the crime of bank robbery." Moore, 916 F.3d at 238 (citing United States v. Wilson, 880 F.3d 80, 74 n.3 (3d Cir. 2018))). Finding that reasoning persuasive, the Second Circuit adopted the same interpretation: Section 2113(a) "delineates two methods of committing the crime of bank robbery:" one in each of its two paragraphs. Id.

The first paragraph creates one indivisible offense, which can be committed either "by force and violence, or by intimidation, takes" or "obtains or attempts to obtain by extortion" anything of value from a bank. 18 U.S.C. § 2113(a). See United States v. Butler, 949 F.3d 230, 234 (5th Cir. 2020) (reasoning that the disjunctive "or" between § 2113(a)'s paragraphs is different than the use of "or" within the paragraph, and "[t]he paragraphs use 'or' internally to set out alternative means."). The second paragraph creates a separate offense of "enter[ing] or attempt[ing] to enter any bank, credit union, or any savings and loan association . . . with intent to commit . . . any felony . . . ." Id. The statute is divisible only to the extent that a court must determine which paragraph a defendant is charged and convicted under, but no further. Accord,

United States v. Burwell, 122 F.4th 984, 990 (D.C. Cir. 2024); Butler, 949 F.3d at 234 (both holding § 2113(a) is divisible between its two paragraphs).

Thus, all of the elements contained in the first paragraph of § 2113(a) are not separate offenses and are instead simply different means of commission. See Burwell, 122 F.4th at 990 ("Rather than create a separate paragraph, as it did with the second paragraph for bank burglary in § 2113(a), or a separate subsection, as it did for bank larceny in § 2113(b) and receipt of stolen bank property in § 2113(c), Congress chose to group extortion together with force and violence and intimidation in the same paragraph of the bank robbery statute. 18 U.S.C. § 2113(a)-(c)."). So, in determining whether the charged violation of 18 U.S.C. § 2113(a) constitutes a crime of violence, this Court's inquiry is whether the entire offense contained in the first paragraph involves the use of force—whether committed "by force and violence, or by intimidation" or "by extortion."

**C. Attempted bank robbery in violation of § 2113(a) is not categorically a crime of violence under the elements clause of Section 924(c)(3)(A).**

United States v. Taylor, 596 U.S. 845 (2022) established that a federal offense qualifies as a "crime of violence" under Section 924(c)(3)(A) only if *every* violation of the statute necessarily requires proof of the use, attempted use, or threatened use of physical force. Attempt offenses do not categorically qualify as crimes of violence when the completed offense can be committed by a threat devoid of any physical force. Id.

18 U.S.C. § 2113(a) punishes one who takes property from a bank "by force and violence, or by intimidation." It follows, then, to secure a conviction for an attempted bank robbery under the same section, the government must show that a defendant (1) intended to commit bank robbery by force and violence or intimidation and (2) that the defendant took a substantial step toward that crime. U.S. v. Stallworth, 543 F.2d 1038 (1976). A defendant could

commit attempted bank robbery by forming the requisite intent but only carrying out an empty threat--a bluff—without ever using, attempting to use, or threatening to use force. This presents the same analytical *issue* the Supreme Court identified in Taylor.

In Taylor the court addressed the "substantial step" issue squarely in holding that an attempted Hobbs Act robbery does not satisfy the force requirement of the elements clause. After finding that an attempt conviction under the Hobbs Act would require proof that the defendant (1) intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) that he completed a "substantial step" towards that end, the Court recognized that a substantial step towards completing the attempted robbery would not always necessary be violent.

> What exactly constitutes a substantial step is beyond the scope of today's case. For present purposes, it is sufficient to observe that the parties again agree. They accept that a substantial step demands something more than "mere preparation." The step, they say, must be "unequivocal" and "significant", though it "need not be violent."
>
> **To know that much is enough to resolve this case.** Whatever one might say about completed Hobbs Act robbery, attempted Hobbs Act robbery does not satisfy the elements clause. Yes, to secure a conviction the government must show an intention to take property by force or threat, along with a substantial step toward achieving that object. But an intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property.

Taylor at 851.(citations omitted, emphasis added)

Inchoate crimes like attempted Hobbs Act robbery or attempted bank robbery "by force and violence *or intimidation*" can be completed when a defendant takes a substantial step towards making an empty threat. That empty threat, bluff, or act of intimidation need not necessarily require force to subject a defendant to an attempt conviction. Taylor tells us that

intending to bluff, but being caught before doing so is not an act of force or attempt to use force that satisfies the requirements of Section 924(c).

The hypothetical attempted robbery Justic Gorsuch used to illustrate this point in Taylor is quite clear. In that hypothetical, the defendant, Adam, tells his friend he's going to rob a particular store. Adam researches, buys supplies, and even writes a threatening note to pass to the cashier. "The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response." Taylor at 852. That Adam is arrested upon stepping foot into the store without ever passing the note does nothing to prevent his attempted robbery conviction. Adam is guilty of attempted robbery. He had the requisite intent to take property from the store's employee by threat of force, and he took a substantial step toward that goal. However, "Adam did not "use" physical force. He did not "attempt" to use such force – his note was a bluff and never delivered. He never even got to the point of threatening the use of force against anyone or anything. He may have intended and attempted to do just that, but he failed." Id. What if, instead of a *store*, Adam attempted to rob a bank? The analysis is exactly the same. Intending to rob a bank with a threatening, but bluffing, note and taking a substantial step towards completing the robbery does not require a use or threat of force. No element of attempted bank robbery under 18 U.S.C. § 2213(a) *requires* proof that the defendant used, attempted to use, or threatening to use force.

Because attempted bank robbery can be completed by attempted to bluff without ever using or threatening to use force means that § 2213(a) does not satisfy the elements clause of § 924(c). The government is not required to prove a defendant used force to secure a conviction in an attempted bank robbery case. Proof that one "intended to take property by force or threat and then took a substantial step to achieve that end . . . hypothetically could fall short of the use,

attempted, use, or threatened use of force against another person or his property." United States v. McCoy, 58 F.4th 72 (2d Circ. 2023); see also Alvarado-Linares v. United States, 44 F.4th 1334, 1346 (11th Cir. 2022).

**D. The Second Circuit's Decision in Collier Was Abrogated by The Supreme Court in Taylor.**

United States v. Collier, 989 F.3d 212 (2021) was decided by the Second Circuit more than a year before the Supreme Court decided Taylor. Collier is no longer good law to the extent that it held that attempted bank robbery categorically qualifies as a crime of violence under the elements clause. Taylor directly addressed and rejected the reasoning that undergirded Collier—namely that an attempt offense categorically satisfies the elements clause when the completed offense can be committed by intimidation or threat. Moreover, Collier did not have the benefit of Taylor's analysis of how attempt liability interacts with threat-based or intimidation-based offenses under the categorical approach. The Supreme Court in Taylor made clear that the inclusion of "intimidation" or "threat" as an alternative means of committing a completed offense renders the corresponding attempt offense categorically ineligible under 18 U.S.C. § 924(c)(3)(A), because an attempt to threaten does not amount to a threatened use of force. United States v. Taylor, 596 U.S. 845 (2022). That principle controls here.

**E. Even a completed bank robbery under § 2113(a) is not a crime of violence under § 924(c)(3)(A)'s Elements Clause.**

Though the reasoning of Taylor is sufficient to require dismissal of Count Four, it is worth mentioning that even a completed bank robbery under § 2113(a) is not a crime of violence under the elements clause of § 924(c). First, as the District of Columbia Circuit recently recognized – and the government in that case conceded – "when completed by extortion, bank

robbery does not necessarily involve the use or threatened use of force. This is because extortion can be accomplished using a threat of something other than violence, such as a threat of economic loss or a threat to reveal compromising information." United States v. Burwell, 122 F.4th 984, 989 (D.C. Cir. 2024). Notably, the Second Circuit, though it has not addressed whether bank extortion qualifies as a crime of violence, United States v. Evans, 924 F.3d 21, 28 (2d Cir. 2019), has recognized, as well, that extortion doesn't require violence. "Neither actual bodily harm nor threatened bodily injury is a necessary element for extortion. Rather, the crime of extortion involves a wide range of conduct, including extortion using economic threats or injury. See McLaughlin v. Anderson, 962 F.2d 187, 194 (2d Cir.1992) (affirming extortion sentence resulting from threat to destroy valuable business records); United States v. Garcia, 907 F.2d 380, 381 (2d Cir.1990) (affirming extortion sentence resulting from threat of economic harm)." Riza v. United States, 933 F. Supp. 331, 336 (S.D.N.Y. 1996).

Second, bank robbery by intimidation doesn't qualify either. In Borden v. United States, 141 S.Ct. 1817 (2021), the Supreme Court held that the phrase "violent felony" as defined in 18 U.S.C. § 924(e)(2)(B)(i) includes only offenses with a mens rea requirement of purpose or knowledge as to the violent actus reus. 141 S. Ct. at 1828; id. at 1935 (Thomas, J., concurring). As the two provisions are identical as pertinent here, Borden's holding clearly applies to § 924(c)(3)(A)'s definition of "crime of violence." Compare 18 U.S.C. § 924(c)(3)(A) ("crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another"), with § 924(e)(2)(B)(i) ("violent felony" is one that "has as an element the use, attempted use, or threatened use of physical force against the person of another"). Thus, a defendant's use of force must be knowing and intentional. Offenses with a mens rea of recklessness, negligence, or strict liability with respect to the use of violent

physical force against the person of another do not count. See Singh v. Garland, 58 F.4th 34, 36 (2d Cir. 2022) ("The 'use of physical force' refers to intentional, rather than accidental, force.").

Bank robbery by intimidation, however, doesn't require an intentional threat. Instead, as one district court has observed, courts that have considered the question have held "that §2113(a)'s implied knowing mens rea applies only to the "taking of property of another" element of the crime. United States v. Yockel, 320 F.3d 818, 820–21 (8th Cir. 2003); see United States v. Ellison, 866 F.3d 32, 39 (1st Cir. 2017) (declining to follow Yockel but noting that the Eighth Circuit is one of "two circuits, post-Carter, [that] have continued to state that the government need not show that the defendant knew that his actions would be intimidating in order to secure a conviction under § 2113(a)")." Paul v. Superintendent, 2022 WL 3043526, *8 (S.D. Ind. 2022).

Inasmuch as bank robbery by intimidation does not require a specific knowledge, purpose or intent that to put the victim in fear of physical injury, it does not categorically qualify as a crime of violence under § 924(c)(3)(A).

**2. Any post-arrest statements attributed to Mr. Lee must be suppressed because they were obtained in violation of his Fifth and Sixth Amendment rights.**

Once a defendant has invoked his right to counsel, he is "not subject to further interrogation by the authorities . . . unless the accused himself initiates further communication." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). The presumption that a defendant who has asked for counsel cannot be questioned continues for at least 14 days after invocation. Maryland v. Shatzer, 559 U.S. 98, 110 (2010).

Interrogation occurs when a suspect in custody is subjected to either express questioning or its functional equivalent. Rhode Island v. Innis, 446 U.S. 291, 300–02 (1980). Under the standard established in Innis, this includes any words or actions on the part of the police that they should know are reasonably likely to elicit an incriminating response. Id.

Mr. Lee unequivocally invoked his right to counsel on April 24, 2026. On that date, questioners from the NYPD attempted to interrogate him. They read him his *Miranda* rights and Mr. Lee asked to speak to a lawyer. One week later, federal agents picked Mr. Lee up from Rikers Island, where he had been detained since his initial appearance in local court.

While the federal agents had Mr. Lee in their custody and were transferring him to Brooklyn, one asked him: "What's your deal, pal?" This was literally an express question and thus interrogation under Innis. Id. at 301 ("[T]he term "interrogation" under Miranda refers . . . to express questioning.) Further, interrogation also refers "to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response. Id. This portion of the definition of interrogation focuses primarily upon the perceptions of the suspect, rather than the intent of the police." Id. Obviously, the agent should have understood that asking a defendant in custody "What's your deal" was reasonably likely to elicit an incriminating response.

On May 1, 2026, Mr. Lee was subjected to custodial interrogation. He had unequivocally invoked his right to counsel one week earlier. He did not initiate any conversation with the agents who picked him up from Rikers Island. Instead, he answered the direct questions they asked him. Therefore, any statements made in response to the agent's question were obtained in violation of Mr. Lee's Fifth and Sixth amendment rights and must be suppressed under the rule announced in Miranda v. Arizona, 384 U.S. 436 (1966).

**3. It would be prejudicial for evidence of firearm possession and Mr. Lee's prior conviction to be introduced at the trial of the unarmed bank robberies charged in Counts One and Two, the Court should order that those counts be tried separately from Counts Three, Four, and Five.**

Federal Rule of Criminal Procedure 8(a) permits joinder of offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Joinder is proper only where the counts bear a sufficient logical connection to one another. See United States v. Turoff, 853 F.2d 1037, 1042–43 (2d Cir. 1988); United States v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990).
Even where joinder is proper under Rule 8(a), Rule 14(a) provides that "[i]f the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Severance is warranted where joinder creates "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993).

The Second Circuit has recognized that the joinder of a felon-in-possession count with other charges presents a distinct and serious risk of precisely this kind of prejudice. In United States v. Jones, 16 F.3d 487 (2d Cir. 1994), the court reversed a conviction because the defendant was prejudiced by the joinder of a felon-in-possession count with other counts. Id. at 492–93. Central to the court's reasoning was its recognition that the ordinary presumption that a jury will follow a limiting instruction evaporates where there is an overwhelming probability that the jury will be unable to do so and the evidence is devastating to the defense. Id. at 493 (citing Greer v. Miller, 483 U.S. 756, 766 n.8 (1987)). The court further identified the transparency of the government's motive for adding the

Felon-in-possession count as a relevant consideration. Id. Other circuits have reached the same conclusion. See United States v. Dockery, 955 F.2d 50, 54–56 (D.C. Cir. 1992); United States v. Daniels, 770 F.2d 1111, 1116–18 (D.C. Cir. 1985); United States v. Lewis, 787 F.2d 1318, 1322–23 (9th Cir. 1986).

Here, Mr. Lee is charged in Counts Four and Five with possessing a firearm during (or shortly after) the alleged attempted bank robbery Charged in Count Three that took place on April 24, 2026. In Counts One and Two, Mr. Lee is charged with an unarmed bank robbery alleged to have occurred on April 21 and an unarmed attempted bank robbery alleged to have taken place on April 22. There is no allegation that he displayed or possessed a firearm during those incidents. Trying the five counts at one trial would have the jury consider two entire categories of proof that are wholly irrelevant to Counts One and Two—the alleged possession of a firearm on another occasion and Mr. Lee's prior felony conviction.

Evidence of these two categories would be inadmissible at a trial of Counts One and Two. No firearm was displayed, brandished, or recovered in connection with the April 21 or April 22 incidents. The gun allegedly recovered from Mr. Lee's bag on April 24 therefore has no tendency to make any fact of consequence to those counts more or less probable. Fed. R. Evid. ("FRE") 401. It is inadmissible on those counts, and its introduction would also violate FRE 403 and 404(b). Proof that Mr. Lee has a prior conviction is an element of Count Five alone. It is inadmissible on the robbery counts under FRE 404(b)(1) and no exception applies. That the government must now also prove Defendant's knowledge of his prohibited status under Rehaif v. United States, 588 U.S. 225, 237 (2019), only enlarges the volume of status evidence the jury will hear.

Taken together, these two categories of proof supply the jury with a ready-made propensity narrative: a man who commits bank robberies, who arms himself, and who is a convicted felon. That narrative does not merely risk misuse. Its only logical work as to April 21 and April 22 *is* the impermissible inference — that a person who was armed and who has a criminal record is the sort of person who robs banks and therefore robbed these banks. FRE 404(b)(1) was written exactly to avoid this chain of reasoning.

Jones holds that the presumption of juror compliance with limiting instructions gives way where there is an overwhelming probability that jurors cannot follow them and the evidence is devastating. Jones, 16 F.3d at 493. Both conditions are satisfied. A jury cannot be expected to hear that Defendant was carrying a loaded firearm and is a convicted felon, and then genuinely disregard both facts while evaluating whether he was the unidentified person captured on surveillance video two or three days earlier. The instruction would require jurors to hold two contradictory propositions at once: that the April 24 evidence proves Mr. Lee's guilt of Counts Three, Four, and Five (the more serious counts), and that the same evidence says nothing about whether he committed materially similar acts in the immediately preceding days.

Because evidence of firearm possession and a prior conviction are irrelevant to Counts One and Two and highly prejudicial, the Court should order that those counts be tried separately.

**4. The Second Amendment protects Mr. Lee's right to possess a firearm and ammunition. The possession offense charged in Count Five exceeds Congress's Commerce Clause authority. Count Five should therefore be dismissed.**

**A. Section 922(g) is unconstitutional on its face and as applied to Mr. Lee.**

Mr. Lee moves to dismiss Count Five of the indictment because 18 U.S.C. § 922(g)(1) is unconstitutional under the Second Amendment, both on its face and as applied to him. We acknowledge that this motion to dismiss is foreclosed by Zherka v. Bondi, 140 F.4th 68 (2d Cir.

2025), which holds that § 922(g)(1) is facially constitutional and not amenable to as-applied challenges. See id. at 77, 93-96; accord United States v. Scott, 2025 WL 3537339 (2d Cir. Dec. 10, 2025) (holding that challenge to § 922(g)(1) conviction for unlawful ammunition possession is "squarely foreclosed" by Zherka). Nevertheless, we move to dismiss Count Five of the indictment to preserve this issue for further potential appellate review.

The Second Amendment protects an individual's right to possess arms for self-defense. This encompasses both the right to possess a firearm and ammunition in one's home and to carry them publicly. See Bruen, 597 U.S. at 9-10. Bruen instructs that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Id. at 17. To withstand a constitutional challenge to such a firearm restriction, the government bears the burden "to demonstrate" that the disputed law "is consistent with this Nation's historical tradition of firearm regulation" by "affirmatively" proving that it is supported by "historical precedent" that "evinces a comparable tradition of regulation." Id. at 19, 27. Under Bruen's test, § 922(g)(1) is unconstitutional both on its face and as applied here. Section 922(g)(1)'s lifelong, categorical ban on possessing a firearm or ammunition following any felony conviction infringes the Second Amendment rights of individuals like Mr. Lee. Mr. Lee is among "the people" to whom the Second Amendment applies—a point that the Second Circuit acknowledged in Zherka. See 140 F.4th at 75-77 (concluding that defendant, "notwithstanding his felony conviction, is among 'the people' protected by the Second Amendment"). And his possession of a firearm and ammunition is protected by the Second Amendment's plain text. See Bruen, 597 U.S. at 8-10 (acknowledging that Second Amendment protects a person's right to "possess a handgun in the home for self-defense" and to "carry handguns publicly for [] self-

defense”); Zherka, 140 F.4th at 76 (“Section 922(g)(1) clearly covers conduct that the Second Amendment presumptively protects.”)

The burden thus shifts to the government to show that § 922(g)(1)’s broad, permanent prohibition of arms possession by anyone with any sort of felony conviction is consistent with the historical tradition of this nation’s firearms regulation. The government cannot demonstrate this consistency. Nor can it demonstrate a similar longstanding historical tradition of prohibiting firearm possession by a person with Mr. Lee’s particular criminal record. Because there is no historical tradition of permanently disarming offenders like Mr. Lee,  Count Five should be dismissed, even if our facial challenge were to fail.

**B. The possession offense charged in Count Five exceeds Congress’s Commerce Clause authority.**

Section 922(g)(1), as currently interpreted, permits the federal government to prosecute wholly intrastate firearm possession based solely on proof that the firearm crossed a state line at some point in the past. That attenuated connection is insufficient to bring local, noneconomic possession within Congress’s power to regulate interstate commerce.

Defendant recognizes that this argument is foreclosed by existing Second Circuit precedent, principally United States v. Santiago, 238 F.3d 213 (2d Cir. 2001) (per curiam). The motion is nevertheless made to preserve the issue in light of Justice Thomas's recent concurrence in United States v. Hemani, 146 S. Ct. 1677, 1694-98 (2026) (Thomas, J., concurring), and the Fifth Circuit's decision to consider the issue en banc in United States v. Squire, No. 25-30324, 2026 WL 2089721, at *1 (5th Cir. July 20, 2026) (per curiam).

Congress may regulate the channels of interstate commerce, the instrumentalities of interstate commerce and persons or things in interstate commerce, and activities that substantially affect interstate commerce. United States v. Lopez, 514 U.S. 549, 558-59 (1995).

The conduct charged here—local possession of a firearm and ammunition—is not itself commercial or economic activity. It does not involve the use of an interstate channel or instrumentality. Nor does a defendant's present possession transform the firearm into a "thing in interstate commerce" merely because the firearm crossed a state boundary at some unspecified time in the past. And the Supreme Court has rejected the proposition that Congress may regulate noneconomic criminal conduct merely by aggregating its asserted effects on interstate commerce. See United States v. Morrison, 529 U.S. 598, 613, 617 (2000); Lopez, 514 U.S. at 567.

Under Scarborough v. United States, 431 U.S. 563, 575-77 (1977), the statutory commerce element may be satisfied by proof that the firearm previously traveled in interstate commerce. But Scarborough was a decision about statutory interpretation. It did not decide whether the Constitution permits Congress to criminalize present intrastate possession based solely on a firearm's historical movement.

Justice Thomas recently emphasized that distinction in Hemani. He explained that Scarborough's holding was "statutory, not constitutional" and that the mere presence of a jurisdictional phrase does not establish that a law falls within Congress's enumerated powers. Hemani, 146 S. Ct. at 1697 (Thomas, J., concurring). A requirement that the firearm crossed state lines at some earlier point does not ensure that "the firearm possession in question affects interstate commerce." Id. Justice Thomas therefore concluded that § 922(g) appears to exceed Congress's Commerce Clause authority and urged lower courts to revisit the issue. Id. at 1694.

The Fifth Circuit has now agreed to consider that question en banc. In Squire, the court granted rehearing en banc on a Commerce Clause challenge to § 922(g)(1) and vacated its prior panel opinion. Order Granting Rehearing En Banc, Squire, No. 25-30324, 2026 WL 2089721, at *1 (5th Cir. July 20, 2026) (per curiam).

For the reasons identified in Justice Thomas's Hemani concurrence, § 922(g)(1)'s possession clause is unconstitutional to the extent it authorizes conviction based solely on a firearm's historical interstate movement. It is also unconstitutional as applied here because the charged possession was wholly intrastate and bore no substantial or contemporaneous relationship to interstate commerce. Therefore, Count Five should be dismissed.

**5. Conclusion**

For the foregoing reasons, the defendant respectfully requests that the Court enter orders: (1) pursuant to Fed.R.Crim.P. 12(b)(3)(B)(v), dismissing Count Four of the indictment for failure to state an offense; (2) pursuant to Fed.R.Crim.P. 12(b)(3)(C), 18 U.S.C. § 3501, and the Fifth and Sixth Amendments, suppressing any statements to be offered at trial allegedly made by the defendant to government agents after his arrest on April 24, 2026 or, in the alternative, directing that a hearing be held outside of the presence of the jury before trial as to the admissibility of such evidence; (3) pursuant to Fed.R.Crim.P. 12(b)(3)(D) and 14(a), ordering that Counts One and Two be tried separately from Counts Three, Four, and Five; (4) pursuant to Fed.R.Crim.P. 12(b)(1) and the Second Amendment, dismissing Count Five of the indictment with prejudice; and (5) granting such other and further relief as the Court may deem just and proper.

DATED: August 12, 2026

Respectfully submitted,
FEDERAL DEFENDERS OF NEW YORK

*s/ Michael K. Schneider*
*s/ Falon Rainer*

MICHAEL K. SCHNEIDER
FALON RAINER
Assistant Federal Defenders
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel.: (718) 330-1200
Email: michael_schneider@fd.org
falon_rainer@fd.org