DCP:JPK/BG
F. #2026R00307

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

26-CR-143 (MKB)

PIERRE LEE,
also known as "Pierre Wilmoth,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTIONS IN LIMINE

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Joseph P. Klemme
Brachah Goykadosh
Assistant U.S. Attorneys
(Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................ 1

BACKGROUND ........................................ 2

ARGUMENT ........................................ 5

I. The Court Should Admit the Defendant's Statements When Offered by the Government but Preclude the Defendant from Offering His Own Statements ........................................ 5

II. The Court Should Admit Evidence of Prior Convictions Pursuant to Federal Rule of Evidence 404(b) ........................................ 10

III. The Court Should Permit Cross Examination of the Defendant Regarding Prior Convictions if He Opens the Door to Them ........................................ 15

IV. The Court Should Admit Body-Worn Camera Video Footage ........................................ 16

V. The Court Should Admit Certain Records by Certification if the Defendant Does Not Stipulate to Authenticity ........................................ 20

VI. The Court Should Preclude Questioning and Argument Regarding the Propriety of the Government's Investigation ........................................ 23

VII. The Court Should Preclude Evidence and Argument Inviting Jury Nullification ........................................ 24

VIII. The Court Should Preclude Evidence and Argument Concerning Punishment and Collateral Consequences ........................................ 28

IX. The Court Should Order the Defendant to Disclose Rule 16(b) Discovery and Trial Exhibits to Be Introduced During His Case-in-Chief ........................................ 30

CONCLUSION ........................................ 33

TABLE OF AUTHORITIES

Page(s)

Cases

Brockhaus v. Gallego Basteri,
No. 15-CV-2707 (KBF), 2015 WL 13882382 (S.D.N.Y. Nov. 20, 2015) ................................ 1
Davis v. Alaska,
415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)......................................................... 29
In re United States,
945 F.3d 616 (2d Cir. 2019)........................................................................................... 25, 26
Melendez-Diaz v. Massachusetts,
557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)..................................................... 21
Old Chief v. United States,
519 U.S. 172, 117 S. Ct. 644, 136 L. Ed 2d 574 (1997)......................................................... 11
Senior by Senior v. Eihab Hum. Servs., Inc.,
No. 15CV1009ENVPK, 2023 WL 7134076 (E.D.N.Y. Apr. 19, 2023)..................................... 17
Shannon v. United States,
512 U.S. 573, 114 S. Ct. 2419, 129 L. Ed 2d 459(1994)........................................................ 29
Sparf v. United States,
156 U.S. 51, 15 S. Ct. 273, 39 L. Ed. 343 (1895).................................................................. 25
United States v. Alcantara,
674 F. App'x 27 (2d Cir. 2016) ............................................................................................. 15
United States v. Bakhtiari,
913 F.2d 1053 (2d Cir. 1990)................................................................................................ 25
United States v. Battaglia,
No. S9 05-CR-774 (KMW), 2008 WL 144826 (S. D. N. Y. Jan. 15, 2008) ........................... 27
United States v. Benitez,
920 F.2d 1080 (2d Cir. 1990).................................................................................................. 7
United States v. Beverly,
5 F.3d 633 (2d Cir. 1993)............................................................................................... 15, 16
United States v. Blake,
195 F. Supp. 3d 605 (S.D.N.Y. 2016)...................................................................................... 6
United States v. Blume,
967 F.2d 45 (2d Cir. 1992).................................................................................................... 30
United States v. Bout,
651 Fed. App'x 62 (2d Cir. 2016).......................................................................................... 21
United States v. Bracy,
No. 20-CR-483 (ARR), 2022 WL 17801133 (E.D.N.Y. Dec. 19, 2022) ................................ 30
United States v. Brown,
254 F.3d 454 (2d Cir. 2001)........................................................................................... 18, 20
United States v. Bumagin,
136 F. Supp. 3d 361 (E.D.N.Y. 2015) ................................................................................... 12

United States v. Carlton,
534 F.3d 97 (2d Cir. 2008)........................................................................................11, 12
United States v. Carton,
No. 17-CR-680, 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) ............................................... 24
United States v. Clanton,
No. 23-CR-328 (KAM), 2024 WL 1072050 (E.D.N.Y. Mar. 12, 2024) ................................. 14
United States v. Curley,
639 F.3d 50 (2d Cir. 2011).......................................................................................................... 14
United States v. Davidson,
308 F. Supp. 2d 461 (S.D.N.Y. 2004)........................................................................................ 6
United States v. Demosthene,
334 F. Supp. 2d 378 (S.D.N.Y. 2004)........................................................................................ 24
United States v. Duncan,
No. 18-CR-289 (SHS), 2019 WL 2210663 (S.D.N.Y. May 22, 2019).................................... 23
United States v. Díaz-Colón,
651 F. Supp. 3d 468 (D.P.R. 2023), aff'd, 163 F 4th 1 (1st Cir. 2025)...................................... 26
United States v. Edwards,
26 F.4th 449 (7th Cir. 2022) ...................................................................................................... 14
United States v. Edwards,
101 F.3d 17 (2d Cir. 1996)......................................................................................................... 25
United States v. Edwards,
631 F.2d 1049 (2d Cir. 1980)...................................................................................................... 29
United States v. Elias,
No. 23-6627, 2025 WL 2857883 (2d Cir. Oct. 8, 2025)............................................................ 15
United States v. Forney,
No. 24-CR-146 (KAM), 2025 WL 2208298 (E.D.N.Y. Aug. 4, 2025).................................... 22
United States v. Gagliardi,
506 F.3d 140 (2d Cir. 2007)....................................................................................................... 21
United States v. Gonzalez,
110 F.3d 936 (2d Cir. 1997)....................................................................................................... 11
United States v. Hsia,
No. CRIM. 98-0057 (PLF), 2000 WL 195067 (D.D.C. Jan. 21, 2000).............................. 30, 31
United States v. Jackson,
180 F.3d 55 (2d Cir.), on reh'g, 196 F.3d 383 (2d Cir. 1999).................................................... 7
United States v. Jackson,
792 F. App'x 849 (2d Cir. 2019) ................................................................................................ 15
United States v. Johnson,
507 F.3d 793 (2d Cir. 2007)......................................................................................................... 7
United States v. Jones,
299 F.3d 103 (2d Cir. 2002)....................................................................................................... 18
United States v. Jones,
858 F. App'x 420 (2d Cir. 2021) ................................................................................................ 15
United States v. Kaufman,
No. 19-CR-504 (LAK), 2021 WL 51521 (S.D.N.Y. Jan. 6, 2021)........................................... 26
United States v. Knox,
687 F. App'x 51 (2d Cir. 2017) .................................................................................................. 23

United States v. Komasa,
767 F.3d 151 (2d Cir. 2014) ... 21
United States v. Kone,
216 F. App'x 74 (2d Cir. 2007) ... 5
United States v. Kwong,
69 F.3d 663 (2d Cir. 1995) ... 25
United States v. Lesniewski,
No. 11-CR-1091 (VM), 2013 WL 3776235 (S.D.N.Y. July 12, 2013) ... 7, 9
United States v. Londono,
175 F. App'x 370 (2d Cir. 2006) ... 23
United States v. Mack,
258 F.3d 548 (6th Cir. 2001) ... 14
United States v. Mahaffy,
No. 05-CR-613 (ILG), 2007 WL 1094153 (E.D.N.Y. Apr. 10, 2007) ... 6
United States v. Malpeso,
115 F.3d 155, 162-63 (2d Cir. 1997) ... 28
United States v. Marin,
669 F.2d 73 (2d Cir. 1982) ... 6, 7, 9
United States v. McCallum,
584 F.3d 471 (2d Cir. 2009) ... 11
United States v. McPartland,
81 F.4th 101 (2d Cir. 2023) ... 10
United States v. Mejia-Valez,
855 F. Supp. 607 (E.D.N.Y. 1994) ... 17, 20
United States v. Miller,
626 F.3d 682 (2d Cir. 2010) ... 25
United States v. Miller,
641 F. Supp. 2d 161,167 (E.D.N.Y. 2009) ... 9, 22, 26, 27
United States v. Napout,
No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) ... 32
United States v. Owens,
484 U.S. 554, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988) ... 19
United States v. Paccione,
949 F.2d 1183 (2d Cir. 1991) ... 26
United States v. Paulino,
445 F.3d 211 (2d Cir. 2006) ... 13
United States v. Payton,
159 F.3d 49 (2d Cir. 1998) ... 15
United States v. Preldakaj,
456 F. App'x 56 (2d Cir. 2012) ... 23
United States v. Qualls,
613 F. App'x 25 (2d Cir. 2015) ... 22
United States v. Reese,
933 F. Supp. 2d 579 (S.D.N.Y. 2013) ... 13, 24
United States v. Reyes,
18 F.3d 65 (2d Cir. 2004) ... 24

United States v. Robinson,
702 F.3d 22 (2d Cir. 2012)........................................................................................ 14
United States v. Russo,
302 F.3d 37 (2d Cir. 2002)........................................................................................ 5
United States v. Rutigliano,
614 F. App'x 542 (2d Cir. 2015) .................................................................................. 7
United States v. Sabir,
No. S4 05 CR. 673 (LAP), 2007 WL 1373184 (S. D. N. Y. May 10, 2007)........................... 27
United States v. Saldarriaga,
204 F.3d 50 (2d Cir. 2000)........................................................................................ 23, 24
United States v. Scott,
No. 24-CR-158 (KAM), 2025 WL 1384301 (E.D.N.Y. May 12, 2025) ................................... 5
United States v. Smothers,
No. 20-CR-213 (KAM), 2023 WL 348870 (E.D.N.Y. Jan. 20, 2023) .............................. 31, 32
United States v. Taylor,
767 F. Supp. 2d 428 (S.D.N.Y. 2010)........................................................................... 13
United States v. Terranova,
750 F. Supp. 3d 15 (E.D.N.Y. 2024) ............................................................................ 22
United States v. Thomas,
116 F.3d 606 (2d Cir. 1997).................................................................................. 25, 26, 29
United States v. Tin Yat Chin,
371 F.3d 31 (2d Cir. 2004)........................................................................................ 21
United States v. Trujillo,
714 F.2d 102 (11th Cir. 1983) .................................................................................... 26
United States v. Washington,
705 F.2d 489 (D.C. Cir. 1983)..................................................................................... 25
United States v. Watts,
934 F. Supp. 2d 451 (E.D.N.Y. 2013) ........................................................................... 29
United States v. Weisser,
417 F.3d 336 (2d Cir. 2005)........................................................................................ 16
United States v. Williams,
930 F.3d 44 (2d Cir. 2019).......................................................................................... 7
United States v. Yousef,
327 F.3d 56 (2d Cir. 2003)...................................................................................... 6, 7, 9
United States v. Yuan Li,
No. 18-CR-302 (BMC), 2020 WL 6393038 (E.D.N.Y. Nov. 2, 2020) .................................. 17

Statutes

18 U.S.C. 3500............................................................................................................ 33
18 U.S.C. § 922(g)(1) .................................................................................................... 2
18 U.S.C. § 924(c)(1)(A)(i) ............................................................................................ 2
18 U.S.C. § 2113(a) ................................................................................................... 2, 21
Connecticut General Statutes Section 53a-134(a)(4)........................................................... 10

Rules

Fed. R. Crim. P. 16(b)(1)(A) ..... 30
Fed. R. Crim. P. 26.2 ..... 32
Fed. R. Evid. 106 ..... 6, 7
Fed. R. Evid. 401 ..... 28
Fed. R. Evid. 402 ..... 25
Fed. R. Evid. 403 ..... 25, 26, 28, 29
Fed. R. Evid. 801(c) ..... 5
Fed. R. Evid. 801(d)(2)(A) ..... 5, 8, 9
Fed. R. Evid. 802 ..... 5
Fed. R. Evid. 803(2) ..... 18
Fed. R. Evid. 803(6) ..... 17, 20, 21
Fed. R. Evid. 803(8) ..... 22
Fed. R. Evid. 902(1) ..... 22
Fed. R. Evid. 902(2) ..... 22
Fed. R. Evid. 902(4) ..... 22
Federal Rule of Criminal Procedure 16(b) ..... 30
Federal Rules of Evidence 803 ..... 20
Federal Rules of Evidence 902(13) ..... 22

## PRELIMINARY STATEMENT

In advance of trial in this matter, the government respectfully moves in limine to:

(1) Admit statements of the defendant when offered by the government and preclude the defendant from offering self-serving hearsay;

(2) Admit evidence of the defendant's prior crimes, wrongs or acts pursuant to Rule 404(b);

(3) Permit cross-examination of the defendant regarding his prior conviction if he opens the door;

(4) Admit body-worn camera video footage;

(5) Authenticate and/or admit records by certification if the defendant does not stipulate pursuant to Rules 803(6) and/or Rules 902(11), 902(13), and 902(14);

(6) Preclude questioning and arguments regarding the propriety of the government's investigation;

(7) Preclude evidence and arguments inviting jury nullification;

(8) Preclude evidence and argument concerning possible punishment and collateral consequences; and

(9) Request that the defendant produce any Rule 16 materials.

For the reasons set forth herein, the government's motions in limine should be granted.[1]

[1] This memorandum cannot anticipate every type of evidence and testimony that will be offered at trial and does not detail all the specific testimony the government will elicit at trial. The government respectfully reserves its right to supplement this filing with additional papers setting forth legal authority for the introduction of evidence and/or additional motions in limine as legal issues are identified prior to or at trial. See Brockhaus v. Gallego Basteri, No. 15-CV-2707 (KBF), 2015 WL 13882382, at *1 (S.D.N.Y. Nov. 20, 2015) ("A lot can happen during a trial.").

## BACKGROUND[2]

On May 1, 2026, a joint task force of Federal Bureau of Investigation ("FBI") agents and New York City Police Department ("NYPD") officers arrested the defendant based on probable cause to believe that he robbed or attempted to rob three federally insured banks in New York, New York and Brooklyn, New York. On May 22, 2026, a grand jury in this District accordingly returned an indictment (the "Indictment") charging the defendant with one count of bank robbery and two counts of attempted bank robbery in violation of 18 U.S.C. § 2113(a). ECF No. 7 (Counts 1-3). The defendant was also charged with use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and because the defendant was previously convicted of a robbery offense punishable by a term of imprisonment exceeding one year, felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). See Id. (Counts 4-5). Trial is scheduled to commence with jury selection on September 8, 2026

The charges against the defendant arise from a string of three bank robbery offenses that occurred between April 21 and April 24, 2026 in New York City. Specifically, on April 21 at approximately 10:40 a.m., the defendant entered a branch of Chase Manhattan Bank located at 71 West 23rd Street in New York, New York (hereafter, "Chase Bank"). Upon approaching the teller, the defendant—who was not wearing a mask—did not say anything but passed the teller a note that stated the defendant was armed, that this was not a joke and requested specific denominations of U.S. currency. During the interaction, the defendant drew the teller's attention to his hip,

[2] The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial. In addition, the proffer of facts set forth in this motion as to any witness's anticipated testimony is a collection of the sum and substance of the witness's anticipated testimony and does not purport to provide a complete statement of all facts and evidence of which the government is aware or will seek to introduce through the respective witness's anticipated testimony.

gesturing towards a concealed firearm. Faced with potential imminent harm, the teller complied with the defendant's demands and handed him $2,155.00 in U.S. currency. After the money was exchanged, the defendant demanded the note back. The teller returned the note and the defendant exited the bank. Although the police were called, the defendant remained at large.

One day later, on April 22, the defendant entered a branch of Citizens Bank located at 2301 86th Street in Brooklyn, New York (hereinafter "Citizens Bank"). Like the robbery the day before, the defendant: (i) entered the bank in the morning (11:25 a.m. on this occasion), (ii) approached a teller station as though he were a customer and (iii) passed the teller a note demanding money but did not otherwise say anything. The teller, fearful that the defendant may harm her or other people in Citizens Bank, attempted to comply and searched through her station drawer but could only find $1. Hoping to appease the defendant, the teller showed him her nearly empty drawer. The defendant demanded the note back. The teller provided the note and the defendant exited the bank. The police were then called but the defendant was not apprehended.

Two days later, on April 24, the defendant struck again. The next, and final bank, was located only several blocks away from the Citizens Bank—this time at a Capital One Bank branch located at 2150 86th Street in Brooklyn, New York (hereinafter "Capital One" or "Capital One Bank"). Like the other two robbery offenses, the defendant used the same *modus operandi* at Capital One Bank: (i) he entered the bank at approximately 11:30 a.m., (ii) did not wear a mask and interacted with employees as though he were a customer (iii) and without saying anything slipped the teller a note that said he was armed, "dead serious" and demanded specific denominations of U.S. currency. This time, the defendant was carrying a red Target bag. While the defendant made the teller fearful for his safety, the teller was unable to access cash at his station and comply with the defendant's demands, which he relayed to the defendant. The defendant

again demanded the note back. The teller returned the note and the defendant exited the bank. The police were called soon after.

After the defendant exited the Capital One Bank, he changed his clothing from a long-sleeved black top to a blue Mets T-shirt, and put on a black hat. The defendant also concealed the red Target bag inside a grey Snipes bag.[3] Though the defendant changed aspects of his appearance, a number of distinctive features—including his glasses, hair style and facial hair, and size and build—were still visible.

NYPD arrived at the scene at approximately 11:47 a.m. After briefly canvassing the surrounding area, NYPD located the defendant at the Bay Parkway Subway Station, which was approximately only one block away from the Capital One Bank, and arrested him at approximately 11:54 a.m. At the time of his arrest, the red Target bag he had been carrying was visible inside the gray Snipes bag.

After his arrest, the defendant was taken to the 62nd Precinct where a search incident to his arrest was performed on his person and the gray Snipes bag in his possession. Pursuant to that search, NYPD found a loaded firearm—a Hi-Point CF380 caliber pistol loaded with five Winchester .380 caliber rounds—bank and identifications cards belonging to the defendant, black clothing matching what the defendant wore during the attempted robbery of Capital One Bank, the red Target bag and $1,263 in cash. Of note, NYPD also found the handwritten note that had been passed to the Capital One Bank teller earlier that day along with several black markers.

---

[3] Snipes is a shoe and clothing store that has locations in Brooklyn, New York.

## ARGUMENT

### I. The Court Should Admit the Defendant's Statements When Offered by the Government but Preclude the Defendant from Offering His Own Statements

At trial, the government will seek to admit statements made by the defendant pursuant to Federal Rule of Evidence 801(d)(2)(A). While those statements should be admitted when offered by the government, the Court should preclude the defendant from offering into evidence any self-serving hearsay statements made by him.

#### A. Applicable Law

The Federal Rules of Evidence define hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 802.

Not all out-of-court statements offered for their truth are hearsay. Out-of-court statements made by a defendant are not hearsay when introduced by the government in a criminal trial to prove the truth of the facts stated therein because they are admissions of an adverse party. See Fed. R. Evid. 801(d)(2)(A) (a statement offered against an opposing party that "was made by the party in an individual or representative capacity" is not hearsay); United States v. Kone, 216 F. App'x 74, 76 (2d Cir. 2007) ("Statements made by the defendant, where relevant, may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party." (internal quotation marks omitted)) (quoting United States v. Russo, 302 F.3d 37, 43 (2d Cir. 2002); United States v. Scott, No. 24-CR-158 (KAM), 2025 WL 1384301, at *5 (E.D.N.Y. May 12, 2025) (finding the defendant's own

statements to his associates to be "clearly admissible as relevant, opposing party statements under Rule 801(d)(2)(A)").

By contrast, it is well established that a defendant generally is prohibited from introducing his own out-of-court statements at trial. See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); United States v. Blake, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (same). This settled rule is necessary because otherwise, a defendant could impermissibly "attempt to get [his] side of the . . . story in front of the jury without [him] testifying and opening [himself] up to cross-examination." United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004).

Therefore, a "court may . . . exclude any portion that consists largely of a defendant's own self-serving statements, which, as offered by him, are inadmissible hearsay." United States v. Mahaffy, No. 05-CR-613 (ILG), 2007 WL 1094153, at *2 (E.D.N.Y. Apr. 10, 2007) (citations omitted); see also United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003 (holding that "while the Government was free to introduce the statement as an admission by a party-opponent, [the defendant] had no right to introduce it on his own" (citations omitted)). Accordingly, the defendant cannot introduce any of his own out-of-court statements either on cross-examination or as part of his case-in-chief, because such testimony would constitute hearsay without a relevant exception.

Such statements are also generally inadmissible under the rule of completeness. Federal Rule of Evidence 106—which embodies the so-called rule of completeness—will permit the defendant only to require admission of such other statements "that in fairness ought to be considered at the same time." Fed. R. Evid. 106. That applies "'only where admission of the

statement in [abridged] form distorts its meaning or excludes information substantially exculpatory of the declarant.'" Yousef, 327 F.3d at 154 (quoting United States v. Benitez, 920 F.2d 1080, 1086–87 (2d Cir. 1990)). Importantly, the completeness doctrine does not "require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." United States v. Johnson, 507 F.3d 793, 796 (2d Cir. 2007) (citations omitted). Rather, the statement specified by the adverse party is only required to be read or heard if it is necessary to: (1) explain the admitted portion; (2) place the admitted portion in context; (3) avoid misleading the trier of fact; or (4) ensure a fair and impartial understanding of the admitted portion. Marin, 669 F.2d at 84. The burden ultimately rests with the defendant to demonstrate that these requirements are met. See United States v. Williams, 930 F.3d 44, 60 (2d Cir. 2019) (observing that defendant "had to demonstrate that admission of" his statements was necessary to explain other statements).[4]

Moreover, the explanatory context offered by any statement that the defendant seeks to introduce under Rule 106 must represent more than "self-serving attempts to shoehorn after-the-fact justifications for his actions into his descriptions of his actions." United States v. Lesniewski, No. 11-CR-1091 (VM), 2013 WL 3776235, at *5 (S.D.N.Y. July 12, 2013) (citing United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999)); United States v. Rutigliano, 614 F. App'x 542 (2d Cir. 2015). Thus, even the fact that a statement that the defendant seeks to admit is "sandwiched in between portions offered by the Government . . . does not compel [its] inclusion." Lesniewski, 2013 WL 3776235, at *5.

[4] The government notes that the 2023 amendments to Rule 106 do not alter this analysis, as the rule was only "amended in two respects": (1) to provide that "if the existing fairness standard requires completion, then that completing statement is admissible over a hearsay objection"; and (2) "to cover all statements, including oral statements that have not been recorded." Fed. R. Evid. 106, Advisory Committee Notes.

B. Application

Here, the government intends to introduce a statement that the defendant made to NYPD Task Force Officer ("TFO") David Bonacarti on May 1, 2026, wherein the defendant said, in sum and substance, "I just walked into the bank and passed them a note." Second, the government also anticipates introducing statements that the defendant made during the bank robbery offenses, specifically, his demands to the tellers to return the demand notes. Third, the government anticipates introducing statements the defendant made to NYPD in response to pedigree questions and while NYPD was conducting an initial search of the Snipes bag, including statements by the defendant that items found on his person and in the Snipes bag belonged to him. Finally, the government anticipates introducing statements from the defendant's Metropolitan Detention Center ("MDC") jail calls, including during a recorded exchange with an individual who appears to be his former partner. On that call, the former partner stated, "you did multiple banks," and the defendant replied, in sum and substance, "no I didn't, I did one . . . I did one . . . they are trying to say I did multiple; it was an attempt." The government may also seek to admit portions of jail calls where the defendant admitted he was in possession of $2,200, the approximate amount of money stolen from the first bank, after acknowledging he committed a bank robbery.

These statements will substantiate the defendant's commission of the charged robberies, reflect his consciousness of guilt for those crimes, and further substantiate his possession of the items, including the firearm, found in his belongings subsequent to his arrest. These statements all fall squarely within Fed. R. Evid. 801(d)(2)(A) because they are statements by an opposing party—i.e., the defendant—that are being offered against him in a criminal trial. The

statements are therefore properly excluded from the rule against hearsay pursuant to Fed. R. Evid. 801(d)(2)(A), and are thus admissible.

The Court should also preclude the defendant from admitting other statements made by him—either on cross-examination or in his case-in-chief—because such testimony would constitute hearsay. As stated above, it is well-established that a defendant generally is prohibited from introducing his own out-of-court statements at trial. See Marin, 669 F.2d at 84. ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). Nor can such statements likely be admitted pursuant to the rule of completeness. See Lesniewski, 2013 WL 3776235, at *5 (fact that a statement that the defendant seeks to admit is "sandwiched in between portions offered by the Government . . . does not compel [its] inclusion.").

Here, the defendant should be precluded from attempting to introduce additional portions of the above-referenced jail call, including portions wherein the defendant states he committed the robbery offenses because of financial hardship and to support his former partner and child. Such statements are hearsay and inadmissible under the rule of completeness because they represent "self-serving attempts to shoehorn after-the-fact justifications for his actions into his descriptions of his actions," Lesniewski, 2013 WL 3776235, at *5. Nor can it be said that the portions the government seeks to admit will be "distort[ed]" without the inclusion of these other portions. Yousef, 327 F.3d at 154. Finally, such evidence has no probative value and is only useful for the improper purpose of engendering "sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses." United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009).

## II. The Court Should Admit Evidence of Prior Convictions Pursuant to Federal Rule of Evidence 404(b)

At trial, the government may seek to introduce evidence of the defendant's prior conviction and bad acts for purposes expressly authorized by Federal Rule of Evidence 404(b), including the defendant's identity, plan, knowledge, intent and absence of mistake. Specifically, the government may seek to introduce evidence relating to the defendant's prior conviction for first degree robbery involving the use or threatened use of a firearm, in violation of Connecticut General Statutes Section 53a-134(a)(4). That conviction was based upon an August 8, 2010 vehicle robbery where the defendant brandished what appeared to be a firearm to three vehicle occupants and demanded they get out of the car. According to the arrest warrant affidavit, the defendant was captured on surveillance footage approaching a Nissan Maxima in a Sav-A-Lot parking lot in Hartford, Connecticut. The defendant then entered the driver's side door, where, according to the victims, he demanded they get out of the car while brandishing a black handgun. The occupants exited the vehicle and the defendant drove away. The defendant pleaded guilty to this offense on June 29, 2011.

### A. Applicable Law

Rule 404(b) provides that evidence of other crimes, wrongs, and acts, though not admissible to prove propensity to commit a crime, are properly admitted for purposes including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Second Circuit "has adopted an 'inclusionary' approach to other act evidence under Rule 404(b), which allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." United States v. McPartland, 81 F.4th 101, 115 (2d Cir. 2023) (citations and quotation marks omitted). Such evidence is correctly admitted if: (1) offered for a proper purpose; (2) relevant to a disputed issue; (3) its probative value is not substantially

outweighed by its potential for unfair prejudice; and (4) the court administers an appropriate limiting instruction on request. See United States v. McCallum, 584 F.3d 471, 475 (2d Cir. 2009). The bar for admission of relevant evidence is not high, as courts should make admissibility decisions "with an appreciation of the offering party's need for evidentiary richness and narrative integrity in presenting a case." Old Chief v. United States, 519 U.S. 172, 183 (1997). "Relevant evidence is [thus] not confined to that which directly establishes an element of the crime." United States v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." Id. at 941.

At trial, the government anticipates that the defendant may raise an identity defense and claim that he is not the person who robbed Chase Bank and that he is not the person who attempted to rob Citizens Bank and Capital One Bank. The government anticipates that the defendant may also claim that he was not in fact armed during the April 24 Citizens Bank attempted robbery. Finally, the government anticipates that the defendant may claim lack of intent or mistake and assert that he entered the bank but did not make an unlawful request for money.

Rule 404(b) explicitly allows the government to introduce evidence of prior bad acts to establish identity, and the Second Circuit has explicitly held that this evidence can include prior robbery convictions. See United States v. Carlton, 534 F.3d 97, 101-02 (2d Cir. 2008). In Carlton, the Second Circuit affirmed the admission of evidence of the defendant's three prior bank robbery convictions for the purpose of proving his identity as the individual who committed the bank robbery charged in the case. See id. The Second Circuit noted that the pattern of prior robberies "was properly admitted to show identity through a common *modus operandi*" based on a number of similarities including the "location, the takeover style of the robberies, or use of a

getaway car." Id. As other courts in this District have accordingly noted, "[e]vidence of prior robberies, especially prior robberies of a similar nature, is admissible to prove *modus operandi* or identity, relationship between coconspirators, and intent." United States v. Bumagin, 136 F. Supp. 3d 361, 369 (E.D.N.Y. 2015).

B. Application

Against this backdrop, the defendant's prior robbery conviction is probative of the defendant's identity through a common *modus operandi*. The 2011 robbery shares multiple characteristics with the April 2026 robbery offenses. For one, both the 2011 and 2026 offenses involved unsuspecting victims who were caught off guard by the defendant approaching them before he suddenly demanded they turn over property. Second, both the 2011 and 2026 offenses involved the use or threatened use of a firearm to ensure the victims' compliance with the defendant's demands.[5] Third, both the 2011 and 2026 offenses did not involve the defendant wearing a mask or otherwise attempting to conceal his face; instead, the defendant kept a normal appearance in order to maintain the element of surprise and catch the victims off guard. That the defendant has exhibited a consistent pattern of sudden, maskless hit-and-run style robberies across each of these offenses decreases the likelihood that law enforcement erroneously identified the defendant as the perpetrator of the Chase Bank robbery and Citizens Bank and Capital One Bank attempted robberies. Given the similarities between the 2011 offense and 2026 offenses described above, the 2011 offense is also probative of the defendant's intent and absence of mistake, and is appropriately admitted for those purposes as well.

---

[5] In 2011, the defendant apparently used a realistic looking BB-gun; in 2026, the defendant alluded to having a gun in at least two of the three robbery offenses and was arrested after the third with a Hi-Point CF380 pistol.

There are also similarities in the actual or threatened use of firearms, which is probative of the defendant's plan, intent, and knowledge of and access to means of committing robberies, as well as an absence of mistake. In this case, the defendant committed at least two of the three 2026 robbery offenses by alluding to his possession of a firearm, and after the third offense was arrested with a Hi-Point CF380 pistol. The defendant's prior 2011 robbery also involved the defendant brandishing what appeared to be a firearm. The 2011 offense is thus probative of the defendant's (i) knowledge of how to plan a robbery involving the actual or threatened use of a firearm, and (ii) knowledge of how to obtain the means to execute a robbery involving the actual or threatened use of a firearm, and his ability to actually obtain those means. See United States v. Taylor, 767 F. Supp. 2d 428, 438 (S.D.N.Y. 2010) (finding that evidence of defendant's conviction for possession of firearms in 2002 was admissible in prosecution of alleged 2008 armed robbery, because this evidence was relevant to issue of "opportunity and absence of mistake and also admissible to demonstrate [defendant's] ability to access such a weapon."). These prior bad acts are therefore appropriately admitted under Rule 404(b).

The admission of this evidence does not pose a meaningful risk of unfair prejudice, and certainly not prejudice unfair enough to substantially outweigh its probative value. Generally speaking, courts reject Rule 403 challenges to relevant evidence that does "not involve conduct more inflammatory than the charged crime." United States v. Paulino, 445 F.3d 211, 223 (2d Cir. 2006) (citation and quotation marks omitted); see also, e.g., United States v. Reese, 933 F. Supp. 2d 579, 582 (S.D.N.Y. 2013) (upholding admission of evidence relating to four prior convictions in a fraud trial where "the prior convictions . . . do not involve conduct any more sensational or disturbing than the charged offenses" (internal quotation marks omitted)). Here, the prior robbery is no more inflammatory than the charged bank robberies because they are fundamentally the same

kind of offense. See, e.g., United States v. Clanton, No. 23-CR-328 (KAM), 2024 WL 1072050, at *19 (E.D.N.Y. Mar. 12, 2024) (affirming admissibility of evidence of prior uncharged acts where they "reflect similar conduct as compared to the charged crimes").

The evidence of this prior conviction is also not unfairly prejudicial due to its age, or the fact that it does not exactly mimic the *modus operandi* of the three bank robberies charged in this case, either. The Second Circuit has previously affirmed the admission of wrongs from well over a decade earlier where those bad acts bore on intent and established a broader pattern of activity. See, e.g., United States v. Curley, 639 F.3d 50, 59 (2d Cir. 2011) (affirming admission of prior acts up to 15 years before the charged conduct to show intent and "pattern of behavior," as the acts "demonstrate[d] a pattern of activity that continued up to the time of the charged conduct" and the "prior acts paralleled the charged conduct"); United States v. Robinson, 702 F.3d 22, 37 (2d Cir. 2012) (citing Curley). And other Circuit courts have noted that when evidence of prior robberies is introduced to establish identity, the presence of dissimilarities does not categorically undermine the probative value of that evidence. See, e.g., United States v. Edwards, 26 F.4th 449, 455 (7th Cir. 2022) ("While some of these characteristics may be generic to any robbery, together they establish a distinct signature for how Edwards and his team carried out these acts. . . . Nor do occasional dissimilarities undermine the collective commonalities."); United States v. Mack, 258 F.3d 548, 554 (6th Cir. 2001) ("[S]tandard conduct, although not particularly unusual by itself, may, in combination, present an unusual and distinctive pattern constituting a 'signature.'").

Finally, to the extent that admission of this evidence risks any unfair prejudice, an appropriate limiting instruction would resolve that concern. The Court can specifically instruct the jury to make clear the limited purposes for which this evidence is being introduced, and that

the jury may not consider the defendant's prior conviction simply to infer that he has a propensity to commit robberies. See, e.g., United States v. Alcantara, 674 F. App'x 27, 30–31 (2d Cir. 2016) (affirming admission of the defendant's prior felony conviction where "the district court . . . provided an instruction intended to limit the prejudicial effect"); United States v. Jackson, 792 F. App'x 849, 853–54 (2d Cir. 2019); United States v. Jones, 858 F. App'x 420 (2d Cir. 2021).

## III. The Court Should Permit Cross Examination of the Defendant Regarding Prior Convictions if He Opens the Door to Them

Even if the Court is not persuaded that the defendant's prior convictions are admissible in the government's case in chief pursuant to Rule 404(b), the government will seek to cross-examine him regarding the prior felony conviction for robbery if the defendant testifies at trial and presents arguments or evidence suggesting that he has never committed a robbery, is unfamiliar with the methods and means of committing robberies, or that he did not intend to commit a robbery and other arguments based on mistake. In the event that the defendant presents such arguments or evidence, his prior conviction would hold substantial impeachment value and prevent the defendant from misleading the jury.

The defendant's denial of his familiarity with the means and methods of armed robbery, his involvement in robberies more generally, and his claimed lack of intent or mistake, would open the door to cross examination regarding this prior conviction. See United States v. Beverly, 5 F.3d 633, 639–40 (2d Cir. 1993) ("[o]nce a defendant has put certain activity in issue by offering innocent explanations for or denying wrongdoing, the government is entitled to rebut by showing that the defendant has lied," including through examination regarding the facts of previously charged offenses); United States v. Elias, No. 23-6627, 2025 WL 2857883, at *3 (2d Cir. Oct. 8, 2025) (same); United States v. Payton, 159 F.3d 49, 58 (2d Cir. 1998) (defendant "has no right to avoid cross examination into the truth of his direct examination, even as to matters not

related to the merits of the charges against him"); United States v. Weisser, 417 F.3d 336, 346 (2d Cir. 2005) (district court did not err in permitting questions regarding criminal history where defendant opened the door and government used the circumstances of his prior conviction to impeach his credibility).

In particular, the defendant's prior conviction and the underlying facts would become relevant to rebut any claim that he has never committed a robbery, including a robbery involving the actual or threatened use of a firearm, or is unfamiliar with the methods and means of committing such a robbery. Beverly is instructive. There, a defendant charged with constructive possession of a gun "testified on direct in a manner calculated to portray himself as a law-abiding [citizen] who had nothing to do with guns" by claiming that he had only limited familiarity with them. 5 F.3d at 640. In light of the defendant's testimony, the Second Circuit affirmed that the government could properly introduce evidence of the defendant's involvement in two prior gun crimes, neither of which he had pleaded to at the time of trial, noting that the evidence "exposed [the defendant's] lack of candor . . . and his familiarity with and use of guns." Id. To the extent that the defendant seeks to portray himself as a law-abiding citizen with little to no familiarity with armed robbery, evidence of his prior conviction is admissible to expose his lack of candor and prevent the jury from being misled.

## IV. The Court Should Admit Body-Worn Camera Video Footage

At trial, the government anticipates introducing body-worn camera footage depicting, *inter alia*, the identification of the defendant by a Capital One Bank employee and the search of the defendant's belonging at the 62nd Precinct, during which his firearm was recovered. The government may also seek to introduce body-worn camera footage depicting one or more law-enforcement interviews of bank employees, which were conducted minutes after the Capital One

attempted robbery occurred. The body-worn camera footage is relevant, does not constitute hearsay, and should be admitted.

A. Applicable Law

Body-worn camera footage is admissible as a business record under Rule 803(6) of the Federal Rules of Evidence because (1) the recordings were made contemporaneously when the events recorded took place; (2) the recordings were kept in the regular course of the NYPD's business; (3) making such recordings is the regular practice of the NYPD; (4) the NYPD officers (or an NYPD custodian of body-worn camera) can testify as to the conditions under which the recordings took place; and (5) there is no indication of a lack of trustworthiness. See Fed. R. Evid. 803(6); United States v. Yuan Li, No. 18-CR-302 (BMC), 2020 WL 6393038, at *12 (E.D.N.Y. Nov. 2, 2020) (noting that "911 emergency phone call[s] . . . . are regularly admitted into evidence as business records" and applying the rubric for 911 calls to contemporaneous law enforcement recordings); see also Senior v. Eihab Human Services, Inc., 2023 WL 7134076, at 1 (E.D.N.Y.,2023) ("[I]t is long settled that police records may be admitted as evidence under the 'business record' or 'public records' hearsay exceptions").

Statements on body-worn camera footage are also admissible as present sense impressions or excited utterances under Rules 803(1) and (2) of the Federal Rules of Evidence, respectively.

Pursuant to Rule 803(1), a present sense impression "has three distinct requirements: i) the statement must describe or explain the event perceived; ii) the declarant must have in fact perceived the event described; and iii) the description must be 'substantially contemporaneous' with the event in question." United States v. Mejia-Valez, 855 F. Supp. 607, 613 (E.D.N.Y. 1994). The reason for this exception is twofold. First, the immediacy requirement

reduces the opportunity for reflection and thus minimizes the likelihood of deception or fabrication on the part of the declarant. Second, immediacy also reduces the likelihood that the declarant will have inaccurately remembered the event in question. See United States v. Jones, 299 F.3d 103, 112 (2d Cir. 2002) ("Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory.").

Pursuant to Rule 803(2), an excited utterance is a statement "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). To qualify as an excited utterance, the proponent of an out-of-court statement must establish: (i) that a startling event occurred; (ii) that the declarant made the statement while under the stress of the excitement caused by the startling event; and (iii) that the declarant's statement relates to the startling event. See United States v. Brown, 254 F.3d 454, 458 (2d Cir. 2001).

B. Application

Here, the Court should admit the body-worn camera footage. The government anticipates introducing body-worn camera footage from at least two members of law enforcement. Specifically, the government anticipates introducing body-worn camera footage depicting a Capital One Bank employee describing the defendant at the Capital One Bank and then identifying the defendant as the attempted bank robber in a nearby subway station (hereinafter "Identification BWC"). Additionally, the government anticipates introducing body-worn camera footage depicting a search of the defendant's belongings at the precinct and the recovery of the defendant's firearm (hereinafter "Firearm BWC"). Finally, the government may seek to introduce body-worn camera footage depicting several bank employee interviews that were conducted minutes after the

attempted robbery occurred (hereinafter "Interview BWC) (collectively with the other types of body-worn camera footage referenced above, the "BWC").[6]

The BWC is plainly relevant under Rule 402. The Identification BWC shows a Capital One employee providing a description of the suspect moments after the attempted robbery. After providing the description, the responding officers ask the Capital One employee to accompany them to a nearby subway station. At the subway station, the Capital One employee identifies the defendant—who changed clothes—as the bank robber, noting the red Target bag in his possession.[7] The defendant was then arrested and brought to the 62nd precinct.

The Firearm BWC shows the defendant, along with the bag that he was carrying when arrested, being searched at the precinct. Of note, the Firearm BWC captures an officer removing the firearm referenced in Counts 4 and 5 of the Indictment from the defendant's bag.

Finally, the Interview BWC shows one of the responding officers speaking with Capital One Bank employees minutes after the defendant is arrested and obtaining their accounts of what happened. The Interview BWC provides a detailed account of the defendant's interactions with two important witnesses, including the teller's recollection of what the defendant's demand note said. Accordingly, each of the above-referenced forms of BWC are relevant under Rule 402.

The BWC are admissible as business records and the statements therein are present sense impressions and/or excited utterances.

---

[6] The government reserves its right to introduce additional relevant body-worn camera footage.

[7] Federal Rule of Evidence 801(d)(1)(C) provides that a declarant-witness's prior statement that "identifies a person as someone the declarant perceived earlier" is not hearsay when the declarant testifies and is subject to cross-examination about the prior statement. The premise of Rule 801(d)(1)(C) is that out-of-court identifications are "generally preferable to courtroom identifications." United States v. Owens, 484 U.S. 554, 562 (1988).

First, as noted above, pursuant to Rule 803(6), the BWC is a record of a regularly conducted activity. The BWC was recorded contemporaneously as the events took place; it was kept in the regular course of NYPD business; its creation is within regular NYPD practice; NYPD officers can testify as to the recording conditions; and there is absolutely no indication of untrustworthiness. See Fed. R. Evid. 803(6).

Second, the statements captured on the BWC are also admissible as present sense impressions and/or excited utterances pursuant to Rules 803(1) and (2) of the Federal Rules of Evidence. Specifically, the statements are present sense impressions because they concern what the witnesses saw—specifically, what the perpetrator looked like, what he acted like, what the demand note said, and in the case of the employee who went to the subway station, his identification of the defendant as the bank robber. These statements were provided by the witnesses moments after the attempted robbery occurred, thus meeting all requirements for being present-sense impressions. Mejia-Valez, 855 F. Supp. at 613. Alternatively, the statements are excited utterances because they are statements concerning a startling event—an attempted armed robbery—experienced by the witnesses and recorded while the declarants were still under the stress of the event. Brown, 254 F.3d at 458.

## V. The Court Should Admit Certain Records by Certification if the Defendant Does Not Stipulate to Authenticity

The government notes, in an abundance of caution, that it may move to authenticate and/or admit certain evidence by certification pursuant to Federal Rules of Evidence 803 and 902 if the parties cannot reach stipulations. For example, the government may need to obtain certifications of authenticity for the surveillance footage capturing the defendant's crimes. Similarly, if the defendant will not stipulate, the government may seek to obtain business or public records for purposes such as establishing that Chase Bank, Citizens Bank and Capital One Bank

are federally insured within the meaning of 18 U.S.C. § 2113(a). To the extent that the government obtains such certifications, it will promptly provide them to the defendant.

The authentication of evidence is not a high bar. See, e.g., United States v. Bout, 651 Fed. App'x 62, 63 (2d Cir. 2016) ("The bar for authentication of evidence under Fed. R. Evid. 901(a) is 'not particularly high.') (quoting United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007)). "It is met where 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." Id. at 63-64 (quoting United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004)).

And Federal Rule of Evidence 902 provides that a range of evidence is "self authenticating," meaning that it requires "no extrinsic evidence of authenticity in order to be admitted." Under Rule 902(11), evidence can be authenticated through a business records certification without the need to call a records custodian as a witness. This Rule was created "so that the foundation requirements of Rule 803(6) [the business records exception to the hearsay rule] can be satisfied under certain circumstances without the expense and inconvenience of producing time-consuming foundation witnesses." United States v. Komasa, 767 F.3d 151, 155 (2d Cir. 2014). Business records can be authenticated by certificates if: (1) the records were "made at or near the time by—or from information transmitted by—someone with knowledge"; (2) the records were "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling"; and (3) "making the record[s] was a regular practice of that activity." Fed. R. Evid. 803(6). Admitting business records that have been authenticated by affidavit or certificate is permissible in criminal cases because it does not violate a defendant's rights under the confrontation clause. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009) ("Business and public records are generally admissible absent confrontation . . . because—having been created

for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."); see also, e.g., United States v. Qualls, 613 F. App'x 25, 28 (2d Cir. 2015).

Rule 902 also provides that public records may be admitted without the need for the testimony of a live custodian, by a variety of means. See Fed. R. Evid. 902(1); Fed. R. Evid. 902(2); Fed. R. Evid. 902(4). Beyond authentication, public records are admissible in evidence where they set out the relevant office's activities and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8).

Certifications can similarly be used to authenticate electronic evidence under Federal Rules of Evidence 902(13) and (14). Specifically, Rule 902(13) allows authentication by certification of "[a] record generated by an electronic process or system that produces an accurate result," and Rule 902(14) does the same for "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification."

Courts in this Circuit regularly admit certificates of authenticity in lieu of custodial testimony. See, e.g., United States v. Forney, No. 24-CR-146 (KAM), 2025 WL 2208298, at *17 (E.D.N.Y. Aug. 4, 2025); United States v. Terranova, 750 F. Supp. 3d 15, 33 (E.D.N.Y. 2024). If the government must authenticate evidence by certification rather than stipulation, the Court should permit the use of such certifications to streamline proceedings and ensure that the jury's time is spent on evaluating the probative evidence to be presented at trial.

## VI. The Court Should Preclude Questioning and Argument Regarding the Propriety of the Government's Investigation

The Court should preclude the defendant from questioning and argument that focuses unduly on the government's investigation overall, rather than the evidence, or lack of evidence, that the government gathered during the investigation.

It is well established that the jury must "base its decision on the evidence or lack of evidence that had been presented at trial," and that "the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged." United States v. Saldarriaga, 204 F.3d 50, 53 (2d Cir. 2000). As a result, courts typically instruct the jury that the government need not use all investigative techniques, and that the jury's focus is properly on the evidence or lack of evidence in the case. See, e.g., United States v. Preldakaj, 456 F. App'x 56, 60 (2d Cir. 2012); United States v. Londono, 175 F. App'x 370, 375 (2d Cir. 2006) (affirming sustained objections to defense summation and noting that "a defendant may comment on the failure of proof in the record, such as the absence of forensic evidence in the form of voice, handwriting, or fingerprint analyses, but defense counsel here did more than that in this case because he argued that the government had failed to undertake to procure such evidence").

The well-settled distinction between arguments regarding the lack of proof in the record and the lack of steps taken by the government is only one example of the broader prohibition on arguments and questioning regarding irrelevant aspects of the government's investigation. See, e.g., United States v. Knox, 687 F. App'x 51, 54-55 (2d Cir. 2017 (instructing jury that the "government is not on trial" is "appropriate") (quotations omitted); United States v. Duncan, No. 18-CR-289 (SHS), 2019 WL 2210663, at *3 (S.D.N.Y. May 22, 2019) ("While [a defendant] may point to any asserted failure of proof in the record, any argument that the government has

failed to carry its burden of proof because it conducted its investigation in a particular way is not relevant."); United States v. Reese, 933 F. Supp. 2d 579, 583–84 (S.D.N.Y. 2013) (holding that "a defendant may not argue before the jury issues relating to the overall propriety of the Government's investigation") (internal quotation marks omitted). Ultimately, the government's case "is not on trial . . . , and the jury will not be asked to pass on the adequacy of its investigation." United States v. Carton, No. 17-CR-680, 2018 WL 5818107, at *3 (S.D.N.Y. Oct. 19, 2018).

While the defendant has not yet indicated that he intends to make such arguments, the government makes this motion out of an abundance of caution to note its concern. In light of the Second Circuit's clear command that the jury's attention belongs on "the evidence or lack of evidence that had been presented at trial," Saldarriaga, 204 F.3d at 52, the Court should preclude arguments that focus on irrelevant aspects of the government's investigation such as its duration or the states of mind of particular government agents. See, e.g., United States v. Reyes, 18 F.3d 65, 71 (2d Cir. 2004) (noting that an agent's "state of mind as her investigation progressed was probably not relevant and was certainly not important to any issue properly in the trial," and that "the history of the investigation was not relevant to the guilt or innocence of the defendant"); United States v. Demosthene, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (precluding argument on topics including "the Government's decision to supersede its original indictment . . . [attempts] to dissect an individual law enforcement agent's state of mind during the course of the investigation, or to belabor the details of the investigation's chronological development").

## VII. The Court Should Preclude Evidence and Argument Inviting Jury Nullification

The Court should preclude the defendant from advancing arguments or evidence that are irrelevant, unfairly prejudicial, misstate the law, intend to elicit sympathy, or, more broadly, invite jury nullification.

Under Rule 402, "irrelevant evidence is not admissible" at trial, Fed. R. Evid. 402, and under Rule 403, a court may exclude even relevant evidence, "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" Fed. R. Evid. 403. See also United States v. Miller, 626 F.3d 682, 689-90 (2d Cir. 2010).

A defendant is entitled to present a defense only if it has a foundation in the evidence, see United States v. Kwong, 69 F.3d 663, 667 (2d Cir. 1995), and so long as it does not fail as a matter of law, see United States v. Bakhtiari, 913 F.2d 1053, 1057 (2d Cir. 1990). If the defense does not have a basis in fact or law, a court should not allow the defendant to present the evidence or advance the argument to the jury. See United States v. Edwards, 101 F.3d 17, 20 (2d Cir. 1996) (holding that a "[d]efendant is not entitled to a jury charge based on a theory that the court properly found to be invalid and irrelevant and hence without foundation") (citation omitted).

Relatedly, a defendant is not entitled to advance an argument or introduce evidence to obtain an acquittal or mistrial through jury nullification. A verdict resulting from jury nullification is "'lawless, a denial of due process and constitute[s] an exercise of erroneously seized power.'" United States v. Thomas, 116 F.3d 606, 615-16 (2d Cir. 1997) (quoting United States v. Washington, 705 F.2d 489, 494 (D.C. Cir. 1983) (per curiam)). A defendant's attempt to focus the jury on sympathy, prejudice or public opinion in coming to a verdict, rather than on the evidence and facts before it, "subverts the jury's solemn duty to 'take the law from the court, and apply that law to the facts of the case as they find them to be from the evidence.'" See In re United States, 945 F.3d 616, 627 (2d Cir. 2019) (quoting Sparf v. United States, 156 U.S. 51, 102 (1895)).

Trial courts have a duty to forestall or prevent such conduct. United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent"); see also United States v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983) ("We therefore join with those courts which hold that defense counsel may not argue jury nullification during closing argument"); United States v. Díaz-Colón, 651 F. Supp. 3d 468, 480 (D.P.R. 2023) ("This Court possesses the discretion to block defense attorney's attempts to serenade a jury with the siren song of nullification, and may instruct the jury on the dimensions of their duty to the exclusion of jury nullification") (citation and quotation marks omitted). A trial court that permits counsel to argue for nullification has "abdicated its duty." In re United States, 945 F.3d 616, 627 (2d Cir. 2019 (granting mandamus after district court issued order permitting jury nullification arguments). Further, the Second Circuit has "categorically" rejected "the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." Thomas, 116 F.3d at 614, 616.

Courts have broad discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis," including "an emotional one." Fed. R. Evid. 403, Adv. Comm. Notes. Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses." Miller, 641 F. Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy); United States v. Kaufman, No. 19-CR-504 (LAK), 2021 WL 51521, at *1 (S.D.N.Y. Jan. 6, 2021) (precluding evidence and argument "concerning defendant's family background, health conditions, other personal factors unconnected to guilt or innocence…and []

evidence of defendant's prior commission of good acts" as it would "would invite the jury to determine the case on the basis of factors that are not relevant to guilt or innocence"); United States v. Battaglia, No. 05-CR-774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008 (precluding "evidence of [d]efendant's family and personal status" as not "relevant to the issue of whether [d]efendant committed the crimes charged").

Here, the Court should preclude the defendant from advancing arguments or evidence that are irrelevant, unfairly prejudicial, misstate the law, intend to elicit sympathy, or, more broadly, invite jury nullification. While the government cannot anticipate the universe of potential nullification arguments, it makes this motion in an abundance of caution to ensure that the jury remains focused on the evidence or lack thereof, rather than extraneous considerations that do not bear on guilt or innocence. For example, the Court should preclude the defendant from eliciting evidence about his housing situation at the time of his arrest; his financial hardship, including evidence indicating he committed the robbery offenses because of financial hardship; his family, including his former partner and child, and evidence indicating he committed the robbery offenses to support them financially; and any other evidence improperly offered to engender sympathy or bias and/or prove his good character.

Evidence and arguments of this sort are not probative of whether the defendant committed the crimes charged, and they are instead primarily designed to improperly garner sympathy or distract the jury from the relevant facts. See United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) ("District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice."); United States v. Sabir, No. S4 05 CR. 673 (LAP), 2007 WL 1373184, at *9 (S.D.N.Y. May 10, 2007 (discussing how evidence should be excluded under Rule 403 where "the proffered testimony would serve merely

to distract the jury's attention from considering the evidence as it applies to the elements of the crimes charged").

Even assuming, *arguendo*, that the defendant's personal hardships had some limited probative value, that value would be far outweighed by the danger of unfair prejudice to the government. Exclusion is appropriate where the admission of evidence creates "risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme." Fed. R. Evid. 403, Adv. Comm. Notes.

The prejudice to the government resulting from the admission of evidence or argument regarding the defendant's personal circumstances far outweighs any probative value such testimony might have. Rather, the clear purpose of such testimony would be to distract the jurors from the relevant facts and seek to influence their verdict through sympathy. Such testimony should be precluded. See Malpeso, 115 F.3d at 162-63 (excluding evidence and precluding argument on issues that had "little or no relevance" to the charged crimes and might encourage jury nullification).

## VIII. The Court Should Preclude Evidence and Argument Concerning Punishment and Collateral Consequences

The Court should preclude the defendant from referencing at trial any potential consequences of his conviction. While the defense has not suggested that it intends to introduce any discussion of these facts at trial, out of an abundance of caution, the government moves to preclude at trial any discussion of the defendant's possible punishments or collateral consequences of conviction.

Evidence regarding possible consequences the defendant may face if convicted should be precluded because it is not relevant. See Fed. R. Evid. 401, 402. "[T]he district court

has broad discretion to exclude evidence that is irrelevant . . . ." United States v. Edwards, 631 F.2d 1049, 1051 (2d Cir. 1980); see also Fed. R. Evid. 403. The defendant's punishment and collateral consequences of conviction are not "facts of consequence" to be determined at trial. Therefore, any evidence of those issues is not relevant. See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").

Such evidence is not only irrelevant, but "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Id. Indeed, jurors are routinely instructed not to consider a defendant's punishment in determining a defendant's guilt. See generally Sand et al., Modern Federal Jury Instructions, Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); United States v. Watts, 934 F. Supp. 2d 451, 464-65 (E.D.N.Y. 2013) ("[I]t is well-established precedent that jurors should not be informed about the possible consequences of their verdict due to the likelihood that prejudice, unfairness, and confusion that would result."). Courts have consistently recognized that juries have no right to nullify, and "trial courts have the duty to forestall or prevent such conduct." Thomas, 116 F.3d at 616. Therefore, the Court should preclude the defendant from referencing potential punishment and collateral consequences at trial.[8]

---

[8] Nevertheless, to the extent that defendant exercises his right to testify, the government should be permitted to cross-examine him regarding the potential consequences of conviction that he faces because those would be relevant to the defendant's credibility as a witness. See Davis v. Alaska, 415 U.S. 308, 316 (1974) ("A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues . . . in the case at

Additionally, in that vein, jurors are routinely instructed not to consider a defendant's potential punishment in determining guilt. See generally Sand et al., Modern Federal Jury Instructions, Instruction 9-; United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992 ("Federal courts usually instruct juries not to consider a verdict's consequences."); United States v. Bracy, No. 20-CR-483 (ARR), 2022 WL 17801133, at *7 (E.D.N.Y. Dec. 19, 2022) (noting that the court intended "to instruct the jury [consistent with Shannon] and will also preclude evidence or argument as to possible punishment or collateral consequences"). This Court should follow this settled practice, both providing a similar instruction and precluding evidence and argument to the contrary.

## IX. The Court Should Order the Defendant to Disclose Rule 16(b) Discovery and Trial Exhibits to Be Introduced During His Case-in-Chief

The government respectfully requests that the Court order the defendant to disclose defense exhibits, including exhibits he intends to introduce through cross-examination of government witnesses, no later than 7 days before jury selection—i.e., on or before September 1, 2026.

Federal Rule of Criminal Procedure 16(b) governs a defendant's disclosures in a criminal case. In relevant part, it requires the defendant to provide the government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). The Rule's purpose "is to avoid surprise and gamesmanship" and "it definitely contemplates reciprocity in the production of evidence that both parties intend to introduce in their case-in-chief at trial." United States v. Hsia, 2000 WL 195067, at *1 (D.D.C. Jan. 21, 2000).

---

hand. The partiality of a witness is subject to exploration at trial, and is always relevant as discrediting the witness and affecting the weight of his testimony.") (internal quotation omitted).

Of course, Rule 16 does not require a defendant to disclose documents he intends to use for purposes of impeaching a government witness (just as Rule 16 does not require the government to disclose documents it intends to use to impeach defense witnesses). But to the extent that a defendant seeks to admit into evidence a document while cross-examining a witness during the government's case-in-chief in order to affirmatively support the defendant's defense or theory of the case, such a document falls within the ambit of Rule 16 and must be produced. As the District Court for the District of Columbia has explained:

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense . . . . The cross-examination of these and other government witnesses therefore is properly seen as part of defendant's case-in-chief if it buttresses her theory of the case.

Hsia, 2000 WL 195067, at *2 (quoting Black's Law Dictionary 207 (7th ed. 1999)). The Hsia court distinguished documents introduced by a defendant via a government witness—which do fall within Rule 16 and should be disclosed—from documents used "merely to impeach a government witness, and not as affirmative evidence in furtherance of [the defendant's] theory of the case, [which] is not part of [the defendant's] case-in-chief." Id. at *2 n.1.

Courts in this district have repeatedly recognized this distinction, ordering the production of defense exhibits "that will not be used solely for impeachment purposes," even if the defense intends to introduce such exhibit during cross-examination. United States v. Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *22 (E.D.N.Y. Jan. 20, 2023); United States v. Thorpe, No. 19-CR-492 (HG), Pretrial Conference Tr. 41 (E.D.N.Y. Aug. 23, 2023) (granting government's motion for disclosure of Rule 16 discovery and defense exhibits two weeks before trial, explaining, "It's not only exhibits that you would introduce if you called a witness, but it's exhibits that you know you're going to introduce through, let's say, the case agent. . . . It's not

only what you're going to put on once the Government says, 'the Government rests.'"); United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (holding that "Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant."). That obligation extends to material produced by the government in discovery that the defense intends to use as an exhibit. See Smothers, 2023 WL 348870, at *22 (requiring advance production of defense exhibits "regardless of whether such an exhibit is in the defense's sole custody").

Here, the government first requested defendant's Rule 16 materials with its first discovery letter on June 17, 2026. ECF No. 12 at 3. To date, the defendant has not disclosed a single document. The defendant's failure to provide reciprocal discovery may be a result of having none to produce; he may not intend to introduce any evidence at trial, as is his right. The defendant, however, cannot rely upon an undefined or not-yet-finalized defense strategy to avoid producing documents in compliance with Rule 16.

Accordingly, to avoid gamesmanship, unfair surprise and undue delay during the trial, the government respectfully requests that the Court order the defendant to produce any defense exhibits he intends to introduce during the government's case (but not those documents to be used for impeachment purposes only) or any defense case no later than 7 days before jury selection.

The government further respectfully submits that, to avoid gamesmanship and delay during the trial, the Court should encourage the disclosure of the statements of any defense witnesses other than the defendant himself along the same lines as the government. See Fed. R. Crim. P. 26.2. The government proposes that the Court order that government and defense

Rule 26.2 material be exchanged simultaneously on a date agreed-upon by the parties. See United States v. Boustani, No. 18-CR-681 (WFK), ECF No. 120 at 1-2 (E.D.N.Y. July 31, 2019) (ordering simultaneous exchange of Rule 26.2 material).

CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's motions in limine.

Dated: Brooklyn, New York
August 12, 2026

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By: /s/
Joseph P. Klemme
Brachah Goykadosh
Assistant U.S. Attorneys
(718) 254-7000