DCP:JPK/BG
F. #2026R00307

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

Docket No. 26-CR-143 (MKB)

PIERRE LEE,
also known as "Pierre Wilmoth,"

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

# THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Joseph P. Klemme
Brachah Goykadosh
Assistant U.S. Attorneys
(Of Counsel)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

ARGUMENT .......... 3

I. The Defendant's Motion to Dismiss Court Four of the Indictment Should be Denied .......... 3

II. The Defendant's Motion to Suppress His Statement Should be Denied .......... 13

III. The Defendant's Severance Motion Should be Denied .......... 20

IV. The Defendant's Motion to Dismiss Count Five Should be Denied .......... 27

CONCLUSION .......... 28

# TABLE OF AUTHORITIES

Page(s)

Cases

Acosta v. Artuz,
575 F.3d 177 (2d Cir. 2009) ..... 17
Borden v. United States
593 U.S. 420, 141 S. Ct. 1817, 210 L. Ed. 2d 63 (2021) ..... 12
Carter v. United States,
530 U.S. 255 (2000) ..... 12
Collier v. United States,
989 F.3d 212 (2d Cir. 2021) ..... passim
Cruz v. Miller,
255 F.3d 77 (2d Cir. 2001) ..... 15
Georgison v. Donelli,
588 F.3d 145 (2d Cir. 2009) ..... 15
Howes v. Fields,
565 U.S. 499 132 S. Ct. 1181, 182 L. Ed. 2d 17 (2012) ..... 16, 19
King v. United States,
965 F.3d 60 (1st Cir. 2020) ..... 7
Mara v. Rilling,
921 F.3d 48 (2d Cir. 2019) ..... 15
Michigan v. Chesternut,
486 U.S. 567 108 S. Ct. 1975, 100 L. Ed. 2d 565 (1988) ..... 16
Mickey v. Ayers,
606 F.3d 1223 (9th Cir.2010) ..... 17, 19
Miranda v. Arizona,
384 U.S. 436 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) ..... 15
Paul v. Superintendent,
No. 213CV00304JMSMJD, 2022 WL 3043526 (S.D. Ind. 2022) ..... 13
Rhode Island v. Innis,
446 U.S. 291 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980) ..... 16, 17
Thompson v. Keohane,
516 U.S. 99 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995) ..... 15
United States v. Aleynikov,
676 F.3d 71 (2d Cir. 2012) ..... 4
United States v. Amato,
15 F.3d 230 (2d Cir. 1994) ..... 21, 22
United States v. Armstrong,
122 F.4th 1278 (11th Cir. 2024), cert. denied, 146 S. Ct. 613, 223 L. Ed. 2d 229 (2025) ... 7, 9, 10
United States v. Bellew,
369 F.3d 450 (5th Cir. 2004) ..... 10
United States v. Blakney,
941 F.2d 114 (2d Cir. 1991) ..... 21

United States v. Broughton
600 F. App'x 780 (2d Cir. 2015) ........................................................................ 15
United States v. Broughton,
983 F. Supp. 2d 224 (E.D.N.Y. 2013), aff'd, 600 F. App'x 780 (2d Cir. 2015)................ 15, 16
United States v. Brown,
412 F.2d 381 (8th Cir. 1969) ........................................................................ 10
United States v. Burwell,
122 F.4th 984 (D.C. Cir. 2024)........................................................................ 11
United States v. Davis
588 U.S. 445, 139 S. Ct. 2319, 204 L. Ed. 2d 757 (2019)........................................ 4
United States v. Diaz
854 F.3d 197 (2d Cir. 2017)........................................................................ 8
United States v. Diaz,
122 F. Supp. 3d 165 (S.D.N.Y. 2015), aff'd, 854 F.3d 197 (2d Cir. 2017) ................................ 8
United States v. Evans
924 F.3d 21 (2d Cir. 2019)........................................................................ 6
United States v. Ellison,
866 F.3d 32 (1st Cir. 2017)........................................................................ 13
United States v. Familetti,
878 F.3d 53 (2d Cir. 2017)........................................................................ 17
United States v. Feyrer,
333 F.3d 110 (2d Cir. 2003)........................................................................ 21, 23
United States v. FNU LNU,
653 F.3d 144 (2d Cir. 2011)........................................................................ 15
United States v. Gillette,
383 F.2d 843 (2d Cir. 1967)........................................................................ 20
United States v. Goist,
59 Fed.Appx. 757 (6th Cir. 2003)........................................................................ 18
United States v. Goldberg,
756 F.2d 949 (2d Cir. 1985)........................................................................ 4
United States v. Hendricks,
921 F.3d 320 (2d Cir. 2019)........................................................................ 5, 12, 13
United States v. Jacobson,
4 F. Supp. 3d 515 (E.D.N.Y. 2014) ........................................................................ 17, 19
United States v. Jackson
No. 25-CR-6083-FPG-1, 2026 WL 1862005 (W.D.N.Y. June 29, 2026)................................ 27
United States v. Jackson
No. 6:25-CR-06083 FPG CDH, 2026 WL 482330 (W.D.N.Y. Feb. 20, 2026) objections overruled, No. 25-CR-6083-FPG-1, 2026 WL 1862005 (W.D.N.Y. June 29, 2026)............... 27
United States v. Jones,
16 F.3d 487 (2d Cir. 1994)........................................................................ 25, 26
United States v. Jones,
No. 13-CR-438 (NGG), 2014 WL 950025 (E.D.N.Y. Mar. 11, 2014)...................................... 17
United States v. Kaplan,
No. 23-CR-293 (JMW), 2025 WL 2200539 (E.D.N.Y. Aug. 1, 2025) .................................... 23

United States v. Litwok,
678 F.3d 208 (2d Cir. 2012)........................................................................................ 22
United States v. Medunjanin,
99 F.4th 129 (2d Cir. 2024) .......................................................................................... 4
United States v. Moore,
916 F.3d 231 (2d Cir. 2019)....................................................................................... 1, 7
United States v. Paduch,
No. 23-CR-181 (RA), 2024 WL 778938 (S.D.N.Y. 2024)............................................ 22
United States v. Page,
657 F.3d 126 (2d Cir. 2011)........................................................................ 22, 23, 25, 26
United States v. Paredes,
388 F. Supp. 2d 1185 (D. Haw. 2005) ........................................................................ 18
United States v. Pena,
961 F.2d 333 (2d Cir. 1992)...................................................................................... 15, 20
United States v. Pizarro,
No. 19-2391, 2023 WL 3332539 (2d Cir. May 10, 2023) ............................................ 21
United States v. Randazzo,
No. 26-CR-74 (CBA), 2026 WL 2185552 (E.D.N.Y. July 24, 2026) ........................... 6, 7
United States v. Rigas,
490 F.3d 208 (2d Cir. 2007)......................................................................................... 4
United States v. Robare
2011 WL 10583565 (N.D.N.Y. Jan. 3, 2011) aff'd, 469 F. App'x 38 (2d Cir. 2012) .............. 27
United States v. Robare
469 F. App'x 38 (2d Cir. 2012) ................................................................................... 27
United States v. Rodriguez,
356 F.3d 254 (2d Cir.2004)........................................................................................ 16
United States v. Ruiz,
894 F.2d 501 (2d Cir. 1990)........................................................................................ 21
United States v. Sampson,
385 F.3d 183 (2d Cir. 2004)........................................................................................ 22
United States v. Santiago,
238 F.3d 213 (2d Cir. 2001)........................................................................................ 27
United States v. Scali,
820 F. App'x 23 (2d Cir. 2020) ............................................................................. 22, 23
United States v. Shteyman,
No. 10-CR-347 (SJ), 2011 WL 2006291 (E.D.N.Y. May 23, 2011) ............................ 15
United States v. Smith,
165 F.4th 751 (3d Cir. 2026) ................................................................................... 9, 10
United States v. Straite,
177 F.4th 261 (4th Cir. 2026) ..................................................................................... 9
United States v. Tail,
459 F.3d 854 (8th Cir.2006) ...................................................................................... 18
United States v. Taylor
596 U.S. 845 142 S. Ct. 2015, 213 L. Ed. 2d 349 (2022)......................................... 1, 8
United States v. Terry,
No. 02-20135-GV, 2002 WL 1803759 (W.D. Tenn. July 30, 2002)........................ 18, 19

United States v. Thornton,
539 F.3d 741 (7th Cir. 2008) .......... 10
United States v. Turoff,
853 F.2d 1037 (2d Cir. 1988).......... 22
United States v. Vines,
134 F.4th 730 (3d Cir. 2025), cert. denied, 146 S. Ct. 607, 223 L. Ed. 2d 226 (2025) .......... 7, 9
United States v. Viscioso,
711 F. Supp. 740 (S.D.N.Y. 1989) .......... 20
United States v. Walters,
910 F.3d 11 (2d Cir. 2018).......... 4
United States v. Watson,
404 F.3d 163 (2d Cir. 2005).......... 20
United States v. Watson,
881 F.3d 782 (9th Cir. 2018) .......... 7
United States v. Waybenais,
Criminal No. 12–244 (JRT/LIB), 2013 WL 1881566 (D.Minn. May 6, 2013).......... 18
United States v. Werner,
620 F.2d 922 (2d Cir. 1980).......... 22
United States v. Willoughby,
860 F.2d 15 (2d Cir. 1988).......... 16, 19
United States v. Wilson,
100 F. Supp. 3d 268 (E.D.N.Y. 2015) .......... 17
United States v. Wilson,
512 F. App'x 75 (2d Cir. 2013) .......... 21
United States v. Yockel,
320 F.3d 818 (8th Cir. 2003) .......... 13
Zafiro v. United States,
506 U.S. 534 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993).......... 22, 23
Zherka v. Bondi,
140 F.4th 68 (2d Cir. 2025) cert. denied, 223 L. Ed. 2d 555 (Jan. 20, 2026) .......... 27

Statutes

18 U.S.C. § 1951(a) .......... 8
18 U.S.C. § 1951(b) .......... 8
18 U.S.C. § 924(c) .......... 1
18 U.S.C. § 924(c)(3)(A) .......... 1, 4
18 U.S.C. § 2113(a) .......... passim
18 U.S.C. §§ 922(g)(1) .......... 3, 27
18 U.S.C. §§ 924(c)(1)(A)(i) .......... 3

Rules

Fed. R. Crim. P. 12(b)(3)(B)(v) .......... 4
Fed. R. Crim. P. 14(a) .......... 22, 23, 24
Federal Rule of Criminal Procedure 8(a).......... 21

PRELIMINARY STATEMENT

The defendant moves on a number of issues ahead of trial in this case, which is scheduled to begin on September 8, 2026: dismissal of certain counts in the Indictment, suppression of a voluntary statement he made to law enforcement, and severance of certain counts in the Indictment. His motions should be summarily denied.

First, the defendant's motion to dismiss Count Four of the Indictment must be denied for a simple reason: binding Second Circuit precedent forecloses it. The defendant claims that Count Four, which charges him with possessing a firearm during a crime of violence under 18 U.S.C. § 924(c), on the ground that the predicate crime—attempted bank robbery "by force, violence and intimidation" under 18 U.S.C. § 2113(a)—is purportedly not a crime of violence. See Indictment at ¶ 3. The Second Circuit, however, has held explicitly that this offense is a crime of violence under 18 U.S.C. § 924(c)(3)(A). See Collier v. United States, 989 F.3d 212, 220 (2d Cir. 2021). That fact alone forecloses this motion.

To avoid Collier, the defense argues that it has been overturned by a Supreme Court decision, United States v. Taylor, interpreting a different statute that criminalizes different conduct than § 2113(a). 596 U.S. 845 (2022). But the categorical approach is statute-specific, and the words of the statute matter. United States v. Moore, 916 F.3d 231, 238 (2d Cir. 2019) ("[T]he categorical approach is confined to the legal elements of the statute[.]"). Unlike the statute at issue in Taylor, § 2113(a) is clear that it requires the prosecution to prove—for both completed and attempted offenses—the defendant engaged in force, violence, or intimidation, which categorically makes the offense a crime of violence. The Second Circuit's opinion in Collier fully grapples with this issue and remains good law post-Taylor.

The defendant makes other arguments as to why § 2113(a) bank robbery, whether completed or attempted, is not a crime of violence but these arguments are also foreclosed by Second Circuit precedent.

Second, the defendant's motion to suppress spontaneous statements he made to law enforcement officers should also be denied. The defendant's suppression motion should be denied because the defendant's spontaneous statements were made in response to an innocent question from law enforcement that was not intended to elicit an incriminating response.

Third, the defendant's motion to sever certain offenses should also be denied. The defense fails to demonstrate substantial prejudice by the joinder of these charges, and ignores the close connection among each of the charged offenses—which dictates they be tried together.

Fourth and finally, the defendant moves to dismiss Count Five of the Indictment, which charges him with being a felon in possession of a firearm and ammunition. However, this motion too must be dismissed as the defendant's arguments are foreclosed by Second Circuit precedent.

For these and other reasons discussed below, the defendant's motions should be denied.

## BACKGROUND

Defendant Pierre Lee is charged with committing a bank robbery and two attempted bank robberies during a four-day span in April 2026. During each of the offenses, the defendant provided a note to the teller demanding money, and during at least two of the offenses, the note said the defendant was armed. After the final offense—an attempted robbery of a Capital One

Bank branch in Brooklyn—the defendant was apprehended and a firearm was found in a bag he was carrying.

The Indictment charges the defendant with five counts: Count One charges bank robbery, in violation of 18 U.S.C. § 2113(a), alleging that, on or about April 21, 2026, the defendant "did knowingly and intentionally take by force, violence and intimidation" money belonging to and in the care, custody, control, management, and possession of a branch of Chase Bank. Indictment at ¶ 1. Counts Two and Three charge attempted bank robbery, in violation of 18 U.S.C. § 2113(a), alleging that, on or about April 22 and April 24, 2026, the defendant "did knowingly and intentionally attempt to take by force, violence and intimidation" money belonging to and in the care, custody, control, management, and possession of a branch of Citizens Bank and Capital One Bank. Indictment at ¶¶ 2-3. Count Four charges the defendant with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), and identifies the predicate crime of violence as "the crime charged in Count Three" (i.e., attempted bank robbery). Indictment at ¶ 4. Count Five charges the defendant with knowingly and intentionally possessing a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1), while knowing he had previously been convicted in a court of one or more crimes punishable by a term of imprisonment exceeding one year. Indictment at ¶ 5.

## ARGUMENT

### I. The Defendant's Motion to Dismiss Court Four of the Indictment Should be Denied

The defendant argues that Count Four of the Indictment—which charges him with using a firearm during a "crime of violence" (namely, the attempted bank robbery in violation of 18 U.S.C. § 2113(a), charged in Count Three)—should be dismissed. The defendant's arguments are foreclosed by binding Second Circuit precedent and the plain language of the statutory text.

A. Applicable Law

Under Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure, a defendant may move to dismiss an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "Since federal crimes are solely creatures of statute, a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." United States v. Aleynikov, 676 F.3d 71, 75-76 (2d Cir. 2012) (internal quotation marks and citations omitted). Courts must accept as true the allegations in an indictment for purposes of evaluating a motion to dismiss. See United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985). The indictment need only allege the "core of criminality" the government intends to prove at trial, since the indictment is "read . . . to include facts which are necessarily implied by the specific allegations made." United States v. Rigas, 490 F.3d 208, 228-29 (2d Cir. 2007) (internal quotation marks omitted). Accordingly, dismissal of an indictment is a "drastic remedy that should be utilized with caution and only in extreme cases." United States v. Walters, 910 F.3d 11, 26 (2d Cir. 2018) (internal citation omitted).

Section 924(c)(3)(A) defines a "crime of violence" as a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). In United States v. Davis, the Supreme Court invalidated the residual clause (§ 924(c)(3)(B)) as unconstitutionally vague, but left the elements clause (§ 924(c)(3)(A)) intact. 588 U.S. 445, 470 (2019). The operative definition of "crime of violence" is therefore the elements clause in § 924(c)(3)(A). See United States v. Medunjanin, 99 F.4th 129, 133 (2d Cir. 2024) ("Post-Davis, a § 924(c) conviction may only be premised on a crime of violence as defined under § 924(c)(3)(A)'s elements clause.").

In United States v. Hendricks, 921 F.3d 320, 327 (2d Cir. 2019), the Second Circuit considered whether bank robbery under § 2113(a), committed "by force and violence, or by intimidation," is a crime of violence under § 924(c)(3)(A). 921 F.3d at 327. Specifically, the Second Circuit framed the issue as "whether credit union robbery 'by force and violence, or by intimidation' categorically constitutes a 'crime of violence,'" and answered: "Perhaps unsurprisingly, we conclude that it does." Id.

Two years later, in Collier v. United States, 989 F.3d 212, 220 (2d Cir. 2021), the Second Circuit addressed the same question with respect to attempted bank robbery under § 2113(a) committed "by force and violence, or by intimidation." Because § 2113(a) "expressly requires that the attempted taking—like the completed crime—be perpetrated 'by force and violence, or by intimidation,'" the Second Circuit held that attempted robbery under § 2113(a) also constitutes a crime of violence under § 924(c)(1)(A).

Thus, within this Circuit, both completed and attempted bank robbery by "force and violence, or by intimidation" are crimes of violence under § 924(c)(1)(A). The defendant now argues that more recent precedent means that Collier is wrongly decided. As set forth below, the defendant is incorrect.

B. Analysis

1. The First Paragraph of § 2113(a) is Divisible

The defendant's first argument is one of statutory construction. Section 2113(a) states:

> (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or

> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—

The defendant's argument focuses on the first paragraph of § 2113(a). Relying on out-of-circuit decisions, the defendant claims that paragraph is indivisible. From there, the defendant claims that because the first paragraph is indivisible, and it encompasses the potentially non-violent crime of bank extortion, bank robbery pursuant to 18 U.S.C. § 2113(a) is categorically not a crime of violence as defined in Section 924(c)(3)(A). See Def. Mot. at 5-6, 9-10. This exact argument was recently rejected by the Honorable Carol B. Amon, U.S. District Court Judge for the Eastern District of New York. See United States v. Randazzo, No. 26-CR-74 (CBA), 2026 WL 2185552 (E.D.N.Y. July 24, 2026). This Court should reject it as well.

In Randazzo, Judge Amon held that "[t]he first paragraph of § 2113(a) sets out two distinct crimes: one that is committed when someone, 'by force and violence, or by intimidation, takes or attempts to take' a financial institution's property, and one that is committed when someone, 'obtains or attempts to obtain by extortion' that property." Id. at *2. In reaching this conclusion, Judge Amon relied on the Second Circuit's holdings in United States v. Evans, where the Second Circuit "stated that § 2113(a) 'contains at least two separate offenses, bank robbery and bank extortion,'" id. (quoting 924 F.3d 21, 28 (2d Cir. 2019)), and Collier, where the Second Circuit ratified its statements in Evans that "'bank extortion' is a 'separate crime,'" id. (quoting 989 F.3d 212, 219 n.9 (2d Cir. 2021)). See Randazzo, 2026 WL 2185552, at *2. Other Circuits

have also described the first paragraph of § 2113(a) as divisible and bank extortion as a separate offense.[1] This Court should reach the same conclusion.

Because the first paragraph of § 2113(a) is divisible, the Court must apply the "modified categorical approach" to determine with which offense the defendant is charged. Id. at *2; see also United States v. Moore, 916 F.3d 231, 238 (2d Cir. 2019) (when a statute is divisible, "a court w[ill] apply the modified categorical approach and look to a limited class of documents, such as the indictment."). Here, Count Three of the Indictment—the charge on which the § 924(c) count is based—charges the defendant with attempted bank robbery by "force, violence and intimidation." ECF No. 7 at 2. It does not charge the defendant with bank robbery by extortion. The Second Circuit has clearly held that attempted bank robbery "force, violence and intimidation" is a crime of violence under § 924(c)(3)(A). See Collier, 989 F.3d at 220.

Accordingly, because § 2113(a)'s first paragraph is divisible, and because the defendant has been charged with a crime of violence pursuant to that section, the defendant's argument fails.

2. § 2113(a) Attempted Bank Robbery By "Force and Violence, or Intimidation" is a Crime of Violence Under Binding Second Circuit Precedent

The defense next argues that Collier has been abrogated by the Supreme Court's decision in United States v. Taylor, such that attempted federal bank robbery is no longer a crime

[1] See, e.g., King v. United States, 965 F.3d 60, 69 (1st Cir. 2020); United States v. Vines, 134 F.4th 730, 734 (3d Cir. 2025); United States v. Watson, 881 F.3d 782, 786 (9th Cir. 2018); United States v. Armstrong, 122 F.4th 1278, 1285 (11th Cir. 2024). Although some Circuits have found the first paragraph of § 2113(a) to be indivisible, see Def. Mot. at 5, 10, the Second Circuit has held otherwise, and this Court should reject the rationale in those decisions. See Randazzo, 2026 WL 2185552, at *2 (stating, "I do not find those [out-of-circuit] cases persuasive, and the Second Circuit has made it clear, through Evans and Collier, that it agrees with the former group").

of violence under § 924(c)(3)(A). This argument misreads Taylor, Collier and § 2113(a), and should also be rejected.

First, the Second Circuit has not held that Collier has been overruled. District Courts are "required to follow [a precedential Second Circuit] decision unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." United States v. Diaz, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015) (emphasis added, internal quotation marks and citations omitted), aff'd, 854 F.3d 197 (2d Cir. 2017). Because it cannot be said that Collier will "inevitably be overruled by the Second Circuit" due to intervening Supreme Court precedent, this Court remains bound by it. Id.

Second, Collier is consistent with Taylor and remains good law. As stated above, to constitute a crime of violence under § 924(c)(3)(A), the offense must involve the use, attempted use, or threatened use of force. In Taylor, the Supreme Court assessed a different statute, the Hobbs Act robbery statute (18 U.S.C. § 1951(a)), which criminalizes "[w]hoever . . . obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do." Id. The statute further defines the word "robbery" as the "unlawful taking or obtaining of personal property from the person . . . of another, against his will, by means of actual or threatened force. 18 U.S.C. § 1951(b). Because a defendant could perform a substantial step (as required in an attempted crime) towards engaging in the unlawful "taking or obtaining of personal property," without necessarily attempting or threatening to use force, the Supreme Court found that attempted Hobbs Act robbery did not constitute a crime of violence. See Taylor, 596 U.S. at 852.

Although both Hobbs Act robbery and bank robbery under § 2113(a) criminalize similar types of offense conduct, in the wake of Taylor, other Courts of Appeals have found that there is "a material distinction in the statutes at issue." United States v. Smith, 165 F.4th 751, 761 (3d Cir. 2026). Unlike § 1951(a), § 2113(a) provides that, "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . ." In interpreting this provision, multiple federal appellate courts have found that the verbs "takes" and "attempts to take" are modified by the phrase, "by force and violence, or by intimidation" that precedes them, meaning that any "attempts to take" must be perpetrated by "force and violence, or by intimidation." See United States v. Vines, 134 F.4th 730, 736 (3d Cir.), cert. denied, 146 S. Ct. 607, 223 L. Ed. 2d 226 (2025) ("We hold that this adverbial phrase does modify both verbs. So even for an attempt, the government must prove force, violence, or intimidation."); United States v. Armstrong, 122 F.4th 1278, 1289 (11th Cir. 2024), cert. denied, 146 S. Ct. 613, 223 L. Ed. 2d 229 (2025) ("Thus, under the statutory text, one commits an attempted bank robbery when, by force and violence or by intimidation, he attempts to take money from a federally insured bank."); see also United States v. Straite, 177 F.4th 261, 264 (4th Cir. 2026) ("The placement of the commas is naturally read to mean that to prove both actual bank robbery and attempted bank robbery, the Government must show 'force and violence, or . . . intimidation.' In other words, the adverbial phrase 'by force and violence, or by intimidation' modifies both the verbs 'takes" and 'attempts to take,'" but affirming on other grounds).

Section 1951(a)'s construction is significantly different. It provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do . . . ." Unlike § 2113(a), there is no statutory language requiring the attempt to be made by force. Vines,

134 F.4th at 738 ("The verb 'attempt' is unmodified. With no statutory language requiring the attempt to be made by force, Taylor applied the Model Penal Code and common law definitions of attempt, which do not require force."); Armstrong, 122 F.4th at 1289 ("Section 1951, on the other hand, is structured differently and does not require any actual or threatened force to sustain a conviction for attempted Hobbs Act robbery.").

The defense claims that § 2113(a) criminalizes "attempts to threaten," which could conceivably not involve the use, attempted use, or threatened use of force. Def. Mot. at 9. This argument, however, relies on an incorrect reading of § 2113(a). Section 2113(a) does not criminalize "attempts to threaten," but only attempts that are perpetrated "by force and violence, or by intimidation." Indeed, the Third Circuit recently addressed this exact argument and found that such "attempts to threaten" would fall outside § 2113(a) because the "'by force and violence, or by intimidation' element [of § 2113(a)] means that a conviction for attempted bank robbery requires a showing of at least intimidation—that is, a threatened use of force—rather than merely an attempt to threaten." Smith, 165 F.4th at 761.

Accordingly, the most natural reading of § 2113(a), and the one that has been endorsed by multiple Courts of Appeals post-Taylor, is one where the government cannot establish an attempted violation of § 2113(a) without proving that the attempt was perpetrated by "force and violence, or by intimidation."[2] In case there remains any doubt that Collier remains good law, the Second Circuit in that case was clear that it views § 2113(a) the same way—that § 2113(a) attempted robbery requires the government to prove the crime was perpetrated "force and violence,

[2] Other federal courts of appeals held the same before Taylor. See United States v. Thornton, 539 F.3d 741, 747 (7th Cir. 2008); United States v. Bellew, 369 F.3d 450, 453-56 (5th Cir. 2004); United States v. Brown, 412 F.2d 381, 384 n.4 (8th Cir. 1969).

or by intimidation," thus making it a crime of violence post-Taylor. On this point the Second Circuit said:

> Attempted bank robbery under § 2113(a) requires that the defendant "by force, violence, or by intimidation . . . attempt[ ] to take" the property at issue. In Hendricks, we determined that bank robbery by intimidation is a crime of violence under § 924(c)(3)(A). Thus, attempted bank robbery is a categorical match for a crime of violence under the force clause of § 924(c)(3)(A), as the statute requires that both the completed crime and its attempt be effectuated "by force, violence, or by intimidation." In the context of § 2113(a), where attempt is defined as including an element of "force and violence," or "intimidation," there can be no question that conviction of attempt requires proof of attempted force or intimidation.

Collier, 989 F.3d at 221 (citations omitted).

Accordingly, there is no basis for this Court to find that Collier is inconsistent with Taylor, let alone so clearly inconsistent that Collier will inevitably be overruled by the Second Circuit. For these reasons, the defendant's Taylor argument should be rejected.

3. § 2113(a) Completed Bank Robbery By "Force and Violence, or Intimidation" is a Crime of Violence Under Binding Second Circuit Precedent

Finally, the defense claims that completed bank robbery is not a crime of violence based on United States v. Burwell, 122 F.4th 984, 989 (D.C. Cir. 2024). The defense's Burwell argument, however, merely rehashes the same argument addressed in Section I.B.1 above regarding § 2113(a) being divisible. Burwell held that the crime of bank extortion did not necessarily involve the use or threatened use of force, and, because the first paragraph of § 2113(a) is indivisible, bank robbery pursuant to § 2113(a) is not categorically a crime of violence. But as stated above, Second Circuit precedent requires this Court to find the first paragraph of § 2113(a) divisible, such that the modified categorical approach needs to be used to determine whether the defendant is charged with bank robbery (i) "by force and violence, or by intimidation," (ii) or by "extortion." Here, the defendant is charged only with robberies or attempted robberies committed

by "by force, violence and intimidation." See ECF No. 7. Both types of crimes are crimes of violence under Second Circuit precedent. See Hendricks, 921 F.3d at 327; Collier, 989 F.3d at 220. Thus, the defense's argument must fail.

The defense next argues that bank robbery by intimidation is not a crime of violence because "intimidation doesn't require a knowing or purposeful intent to cause fear of physical injury." Def. Mot. at 10. The defense relies primarily on Borden, which held that offenses committed with a *mens rea* of recklessness do not qualify as violent felonies under the Armed Career Criminal Act's elements clause. 593 U.S. 420 at 441-442 (2021). But Borden does not help the defendant because § 2113(a) robbery by intimidation is not a recklessness offense in this Circuit. Hendricks held the opposite.

In Hendricks, the defendant argued that § 2113(a) was not a crime of violence because a person could violate the statute by "negligently intimidating a victim." 921 F.3d at 328. The Second Circuit rejected that argument as "unavailing." Id. Relying on Carter v. United States, 530 U.S. 255, 268 (2000), the Second Circuit explained that § 2113(a) requires proof of "knowledge with respect to the actus reus of the crime (here, the taking of property of another by force and violence or intimidation)." Hendricks, 921 F.3d at 328. And with respect to intimidation specifically, the court held that a defendant "must at least know that his actions would create the impression in an ordinary person that resistance would be met by force." Id. (emphasis in original). "In short," the court concluded, "*knowledge*, not merely negligence, is required." Id. (emphasis in original).

That holding forecloses the defendant's Borden argument. Borden excludes crimes that can be committed recklessly, and Hendricks holds that § 2113(a) robbery by intimidation requires knowledge. There is no conflict between the two cases.

Nor do the other authorities cited by the defendant change the result. The defense cites United States v. Yockel, 320 F.3d 818 (8th Cir. 2003) and Paul v. Superintendent, 2022 WL 3043526, *8 (S.D. Ind. 2022), which relies on Yockel, for the proposition that § 2113(a) robbery by intimidation does not require proof that the defendant knew his conduct would be intimidating. See Def. Mot. at 10. Yockel, however, is an out-of-circuit decision that predates Hendricks and cannot displace controlling Second Circuit law. Hendricks rejected the same *mens rea* argument the defendant advances here, holding that a defendant commits § 2113(a) robbery by intimidation only if he "at least know[s] that his actions would create the impression in an ordinary person that resistance would be met by force." 921 F.3d 328 (emphasis removed). In any event, Yockel did not hold that bank robbery by intimidation falls outside the elements clause; it affirmed a § 2113(a) conviction and found sufficient evidence of intimidation even though the defendant "did not display or make any reference to a weapon." Yockel, 320 F.3d at 825. The defendant also cites United States v. Ellison, 866 F.3d 32 (1st Cir. 2017), but Ellison rejected the argument the defendant makes here and held that federal bank robbery by intimidation is a crime of violence. Id. at 39-40 (rejecting defendant's "mens rea-based argument [that] his conviction under § 2113(a) does not qualify as . . . a 'crime of violence[.]'").

Because the defendant's arguments are squarely rejected by this Circuit's jurisprudence, his motion to dismiss Count Four should be denied.

## II. The Defendant's Motion to Suppress His Statement Should be Denied

### A. Background

The defendant next argues that law enforcement subjected him to custodial interrogation by asking, "What's your deal, pal," as he was being transferred from state custody to federal custody, because law enforcement should have known that question would elicit an

incriminating response. For the reasons set forth below, the defendant's argument should be denied.

The defendant cannot show that he was subject to custodial interrogation. On May 1, 2026, the defendant was federally arrested at Rikers Island, handcuffed, and placed into the rear passenger seat of a Federal Bureau of Investigation ("FBI") vehicle for transport from Rikers Island to the Eastern District of New York. While still on Rikers Island, New York City Police Department Task Force Officer David Bonacarti ("TFO Bonacarti") sat in the rear driver side of the vehicle, next to the defendant. Before the FBI vehicle left Rikers Island, TFO Bonacarti: (i) explained to the defendant what was happening, (ii) told him that he was being transported by federal agents from state to federal custody and (iii), that he would likely be housed at the Metropolitan Detention Center. The defendant stated that he understood, and that he wanted nothing to do with Rikers Island. TFO Bonacarti then asked the defendant if he was okay, and he said he was. In order to establish a rapport with the defendant. TFO Bonacarti then asked the defendant, "What's your deal, pal?," To this, the defendant replied, "I just walked into the bank and passed them a note."

In response, TFO Bonacarti immediately stopped the defendant from speaking, stating that he would not be asking the defendant about the crimes and that he should not speak about the crimes. TFO Bonacarti then explicitly clarified to the defendant that what he meant by "What's your deal, pal," was where the defendant was from, whether he had a family, and where he grew up.

After TFO Bonacarti made this clear, the defendant was cooperative and proceeded to share personal information about himself, including that he had lost money in the stock market

and food locations in Harlem where he grew up. The defendant never expressed or brought up any issues during the rest of the ride from Rikers Island.

B. Applicable Law

"On a motion to suppress statements, it is the defendant who bears the burden of demonstrating that he was subject to custodial interrogation. United States v. Shteyman, No. 10-CR-347 (SJ), 2011 WL 2006291, at *14 (E.D.N.Y. May 23, 2011) (citing United States v. Pena, 961 F.2d 333, 338 (2d Cir. 1992); see also United States v. Broughton, 983 F. Supp. 2d 224, 228 (E.D.N.Y. 2013), aff'd, 600 F. App'x 780 (2d Cir. 2015). Prior to any custodial interrogation, a defendant must be informed of his or her Fifth Amendment rights as set forth in Miranda v. Arizona, 384 U.S. 436 (1966). However, determining whether a custodial interrogation actually took place involves "two parts: (a) there must be an interrogation of the defendant, and (b) it must be while [the defendant] is in 'custody.'" United States v. FNU LNU, 653 F.3d 144, 148 (2d Cir. 2011) (citing Cruz v. Miller, 255 F.3d 77, 80-81 (2d Cir. 2001)).

1. Custody

When evaluating whether a defendant is in custody for Miranda purposes, courts must consider "the circumstances surrounding the interrogation; and . . . given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995). "[T]he overarching 'custody' question is whether 'a reasonable [person] in the suspect's position would have understood' [himself] to be 'subjected to restraints comparable to those associated with a formal arrest.'" FNU LNU, 653 F.3d at 153 (quoting Georgison v. Donelli, 588 F.3d 145, 155 (2d Cir. 2009)); see also Mara v. Rilling, 921 F.3d 48, 70 (2d Cir. 2019) ("A person is seized within the meaning of the Fourth Amendment if, under the totality of the circumstances, a reasonable person

would have believed that he was not free to leave.") (citing Michigan v. Chesternut, 486 U.S. 567, 573 (1988)). The questioning must involve "a measure of compulsion above and beyond that inherent in custody itself." Rhode Island v. Innis, 446 U.S. 291, 300 (1980). Put differently, "the questions asked must have been both likely to elicit an incriminating response and to produce psychological pressures that will subject the individual to the 'will' of his examiner." Broughton, 983 F. Supp. 2d at 230 (quoting United States v. Rodriguez, 356 F.3d 254, 258 (2d Cir.2004)).

When a defendant is an inmate, not every interaction he or she has with law enforcement officials automatically triggers the requirement to issue Miranda warnings prior to conversations, otherwise all statements made by inmates may be subject to suppression. United States v. Willoughby, 860 F.2d 15, 23 (2d Cir. 1988) ("[T]he mere fact of imprisonment does not mean that all of a prisoner's conversations are official interrogations that must be preceded by Miranda warnings."). Instead, the Supreme Court has instructed courts to consider "all of the circumstances surrounding the interrogation," to determine how a "suspect would have gauged his freedom of movement." Howes v. Fields, 565 U.S. 499, 509 (2012) (internal quotation marks and citations omitted). In conducting this analysis, "relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." Id. (citations omitted). "Not all restraints on freedom of movement amount to custody for purposes of Miranda," and the Supreme Court has instead looked to "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda." Id.

2. Interrogation

For Miranda purposes, "interrogation" includes express questioning of the suspect and its "functional equivalent . . . words or actions on the part of law enforcement officers that the officers should know are reasonably likely to elicit an incriminating response for the suspect." Innis, 446 U.S. at 301 (holding that a comment of one officer to another, in defendant's presence, that handicapped children might find murder weapon and injure themselves not to constitute interrogation). However, the "definition of interrogation is not so broad as to capture within Miranda's reach all declaratory statements by police officers concerning the nature of the charges against the suspect and the evidence relating to those charges." Acosta v. Artuz, 575 F.3d 177, 191 (2d Cir. 2009). See United States v. Familetti, 878 F.3d 53, 57 (2d Cir. 2017) (quoting United States v. Wilson, 100 F. Supp. 3d 268, 277 (E.D.N.Y. 2015) ("[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response."). Even "subtle compulsion" or striking a "responsive chord" with a defendant is, alone, insufficient to constitute interrogation. United States v. Jones, No. 13-CR-438 (NGG), 2014 WL 950025, at *3 (E.D.N.Y. Mar. 11, 2014). Instead, courts must evaluate "in light of the totality of the circumstances," whether the police should have known that their conduct was "reasonably likely to elicit an incriminating response." Acosta, 575 F.3d at 191.

Multiple courts, in this Circuit and others, have found that casual conversation, such as small talk, is not reasonably likely to elicit an incriminating response. United States v. Jacobson, 4 F. Supp. 3d 515, 533 (E.D.N.Y. 2014) (Bianco, J.) (citing Mickey v. Ayers, 606 F.3d 1223, 1235 (9th Cir.2010) ("Casual conversation is generally not the type of behavior that police should know

is reasonably likely to elicit an incriminating response."); United States v. Tail, 459 F.3d 854, 858 (8th Cir.2006) ("Polite conversation is not the functional equivalent of interrogation."); United States v. Goist, 59 Fed.Appx. 757, 763 (6th Cir. 2003) (holding that statements were not the product of interrogation when made during the course of "small talk" between defendant and agent); United States v. Waybenais, Criminal No. 12–244 (JRT/LIB), 2013 WL 1881566, at *1 (D.Minn. May 6, 2013) ("[A]n officer need not give Miranda warnings prior to engaging in polite conversation with a suspect, as long as the officer does not steer the conversation toward potentially incriminating topics and is not otherwise engaging in conduct that is reasonably likely to result in an incriminating response.")). By the same token, casual statements and questions do not constitute custodial interrogation because they are not likely to elicit an incriminating response. See United States v. Terry, No. 02-20135-GV, 2002 WL 1803759, at *9 (W.D. Tenn. July 30, 2002) ("Lt. Benjamin's question of either 'What's up?' or 'How are you?' was sufficiently vague that a reasonable person would not think that the question was designed to elicit an incriminating response. Terry was not coerced into making the statement."); see also United States v. Paredes, 388 F. Supp. 2d 1185, 1193 (D. Haw. 2005) ("Nevertheless, Officer Espinueva's response to Paredes's second request to make a statement—something to the effect of 'What's up?'—does not constitute 'custodial interrogation.'");

C. Analysis

The Court should deny the defendant's motion to suppress his statement. Assuming *arguendo* that the defendant was in custody, the defendant was not interrogated and therefore his statement should not be suppressed.[3] TFO Bonacarti's statement was meant to be a

---

[3] The government does not concede that the defendant was in Miranda custody at the time of his statement. Considering the circumstances surrounding the statement, the restraint on the defendant's freedom did not have the inherently coercive pressure as the stationhouse

casual, introductory comment—not a statement intended to elicit an incriminating response—and there was no factual basis for the defendant to believe otherwise. On this point, the full context of the interaction must be considered. TFO Bonacarti was going to travel with the defendant from Rikers Island to the Eastern District of New York courthouse. Given that the transport was going to take some time, it was natural for TFO Bonacarti to initiate small talk, which he did by asking, "What's your deal, pal."

TFO Bonacarti asked "what's your deal, pal" only after explaining the context of what was happening, ensuring that the defendant understood what was happening, and ensuring that the defendant was okay—which the defendant answered affirmatively. Given that their exchange up until that point had been casual and cordial, in light of the totality of the circumstances, TFO Bonacarti had no reason to believe that the defendant would then respond to his question in the way he did. Nor was there anything about that open-ended question, which in no way referenced the defendant's alleged crimes, that should have led TFO Bonacarti to reasonably believe the statement would elicit an incriminating response. See Jacobson, 4 F. Supp. 3d at 533 (citing Ayers, 606 F.3d at 1235 ("Casual conversation is generally not the type of behavior that police should know is reasonably likely to elicit an incriminating response."); Terry,

---

questioning at issue in Miranda. Specifically, on May 1, 2026—the date of the statement—the defendant had been in state custody for approximately one week, and it cannot be said that he was in "custody" indefinitely during that period. Willoughby, 860 F.2d at 23. And while the defendant was in restraints when being escorted into the FBI transport vehicle, he was also informed of the purpose of his interaction with TFO Bonacarti, which was to take him into federal custody. TFO Bonacarti explicitly asked the defendant if he understood and if he was okay and the defendant replied yes to both questions. The defendant was not brought to an interrogation room, or told he was going to be asked questions about the case, or otherwise pressured to reveal information. His affirmative responses to TFO Bonacarti's initial questions show that he understood that he was simply be transported from state to federal custody—and do not establish the type of "coercive pressure" at issue in Miranda. See Howes, 565 U.S. at 509. In other words, there is no indication in the factual record—and the defendant has not submitted an affidavit averring otherwise—that the defendant was under any sort of coercive pressure.

2002 WL 1803759, at *9 ("Lt. Benjamin's question of either 'What's up?' or 'How are you?'" was not designed to elicit an incriminating response.)

Therefore, as no "custodial interrogation" occurred, and because TFO Bonacarti could not have known under the totality of the circumstances that his question would be reasonably likely to elicit an incriminating response, the defendant's motion to suppress should be denied.

Finally, the defendant's request for a hearing should be summarily denied. See Def. Mot. at i.[4] He has no absolute right to one. See United States v. Watson, 404 F.3d 163, 167 (2d Cir. 2005). Rather, a trial court must grant such a hearing only if a movant's affidavit contains specific factual allegations which, if proven, would warrant the relief requested. See id.; United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) (hearing on a motion to suppress not required unless the defendant's submissions raise a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for the motion). In other words, there must be a material factual dispute for a hearing to be justified. See United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967) (suppression hearing available only if there is a "factual issue to be resolved"); United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) ("the defendant must show that disputed issues of material fact exist before an evidentiary hearing is required") (internal quotation marks omitted)). Here, the defendant does not dispute any of the facts; nor has he submitted any affidavit creating a factual dispute. Thus, as there is no factual dispute in need of resolution to warrant a hearing, this request should be denied.

## III. The Defendant's Severance Motion Should be Denied

The defendant moves to sever his trial into two proceedings: one trial on Counts One and Two (the April 21 robbery and April 22 attempted robbery charges) and one trial on

[4] The defendant appears to request a hearing in his notice of motion only.

Counts Three, Four and Five (the April 24 attempted robbery, use of a firearm during the April 24 attempted robbery, and felon in possession charges) of the Indictment. The crux of the defendant's argument is that evidence concerning the defendant's firearm possession and prior conviction are prejudicial. However, because any purported prejudice does not rise to the level of substantial prejudice and the Court can effectively ameliorate any prejudice with a limiting instruction, the Court should deny the defendant's motion to sever.

A. Applicable Law

Federal Rule of Criminal Procedure 8(a) permits joinder of multiple offenses that are (1) "of the same or similar character," (2) "based on the same act or transaction," or (3) "connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Counts that have a "sufficient logical connection" to each other can be tried together, United States v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990), as can those "where the same evidence may be used to prove each count," United States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991). Joinder of counts is also appropriate where the evidence proving the counts is "interconnected and overlapping," United States v. Amato, 15 F.3d 230, 236 (2d Cir. 1994), such as through "some substantial identity of facts or participants" or because they "arise out of a common plan or scheme," United States v. Pizarro, No. 19-2391, 2023 WL 3332539, at *2 (2d Cir. May 10, 2023); United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) (courts use a "common sense approach when considering the propriety of joinder").

Courts in this Circuit have "interpreted Rule 8(a) as providing a liberal standard for joinder of offenses," United States v. Wilson, 512 F. App'x 75, 76 (2d Cir. 2013), which "reflects a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues

to the accused" when offenses are tried together, United States v. Turoff, 853 F.2d 1037, 1042 (2d Cir. 1988).

Under Rule 8(a) joinder, in establishing that a single defendant's conduct constituted a common scheme, the Court may consider the evidence underlying the charges, including evidence adduced at trial. See United States v. Scali, 820 F. App'x 23, 26-27 (2d Cir. 2020) (upholding joinder under 8(a) because evidence at trial showed sufficient logical connection between counts); United States v. Litwok, 678 F.3d 208, 216-17 (2d Cir. 2012) (finding misjoinder based on lack of evidentiary overlap at trial).

If the joinder of offenses "appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). However, because Rule 8 joinder inherently "authorizes some prejudice," a defendant who "seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in 'substantial prejudice.'" Amato, 15 F.3d at 237 (emphasis added). The defendant must show prejudice that is "unfair," and "not merely that [the defendant] might have had a better chance for acquittal at a separate trial." United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011); see also United States v. Werner, 620 F.2d 922, 929 (2d Cir. 1980) (substantial prejudice requires more than "the adverse effect of being tried for two crimes rather than one"); see also United States v. Paduch, 2024 WL 778938, *2 (S.D.N.Y. 2024) ("To prevail on a severance motion, 'the defendant must show not simply some prejudice but substantial prejudice.'" (quoting United States v. Sampson, 385 F.3d 183, 190 (2d Cir. 2004)). Furthermore, the prejudice must be "sufficiently severe to outweigh the judicial economy" of a joint trial. Page, 657 F.3d at 129.

Rule 14 also "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro v. United States, 506 U.S. 534, 539-40 (1993). This is because

"Rules 8[] and 14 are designed to promote economy and efficiency and to avoid a multiplicity of trials, so long as these objectives can be achieved without substantial prejudice to the right of [a defendant] to a fair trial." Page, 657 F.3d at 129 (quoting Zafiro, 506 U.S. at 540).

Because Rule 14 explicitly permits a district court to "provide any other relief that justice requires," Fed. R. Crim. P. 14(a), the rule "does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538-39. Even in the rare circumstances where "the risk of prejudice is high," severance is not required, as "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Id. at 539. Courts use a "common sense approach when considering the propriety of joinder." United States v. Kaplan, No. 23-CR-293 (JMW), 2025 WL 2200539, at *9 (E.D.N.Y. Aug. 1, 2025) (citing Feyrer, 333 F.3d at 114).

B. Analysis

Here, Counts Three, Four and Five of the Indictment are properly joined to Counts One and Two under Rule 8(a) of the Federal Rules of Criminal Procedure.

The defendant's argument ignores the exceptionally close "logical connection" to the defendant's "common scheme" of robbing or attempting to rob multiple banks during a single week in April 2026, which underlies the charges. Scali, 820 F. App'x at 27. The defendant robbed or attempted to rob three banks in four days, with the second and third banks being only several blocks from one another. The defendant employed a nearly identical *modus operandi* across the three robbery offenses: he entered the banks around 11:00 a.m. in the morning; he handed the teller a threatening note, which he later demanded back; he never wore a mask and tried to behave like a normal customer, before fleeing the bank on foot. In at least the April 21 (Count One) robbery and April 24 (Count Three) attempted robbery the defendant informed the teller that he was armed,

and the teller during the April 22 robbery (Count Two) was fearful the defendant would harm her or other people in the bank. When the defendant was arrested on April 24, a search incident to arrest proved that he was in fact armed during the April 24 robbery; and although the government has not charged the defendant with carrying a gun during the April 21 and April 22 crimes that underlie Counts One and Two, it intends to elicit evidence during trial that would allow the jury to infer that he was during at least one of them. Put simply, evidence of the defendant's gun possession is relevant to all or nearly all counts, making any severance of the charges futile and the two trials the defendant seeks duplicative.

Furthermore, the purported prejudice the defendant claims does not warrant severance under Federal Rule of Criminal Procedure 14(a). The defendant fails to articulate "substantial prejudice" that is sufficiently severe to outweigh the judicial economy of a joint trial. The defendant's argument in support of severance appears to be twofold pursuant to Rules 403 and 404 of the Federal Rules of Evidence. First, he argues that trying all the Counts in the Indictment together "would have the jury consider two entire categories of proof that are wholly irrelevant to Counts One and Two." Def. Mot. at 14. But that is simply not true. Evidence of the defendant's gun possession pervades this case and will be relevant to at least the April 21 robbery charge. Second, and where defendant's concern appears to chiefly lie, is with a misguided, impermissible "propensity narrative," that he himself has constructed.[5] <u>See</u> Def. Mot. 14-15. But the government will not violate Rule 404(b) and advance the impermissible argument that the defendant is the "sort

---

[5] Separately, the defendant asserts that introduction of his conviction is inadmissible under Federal Rule of Evidence 404(b)(1) and claims that no exception applies. <u>See</u> Def. Mot. at 14. Not so. As explained in the government's motions in limine, there are permissible purposes under Rule 404(b)(2) that would permit the introduction of the defendant's prior conviction. <u>See</u> ECF No. 23 at 10-16.

of person who robs banks and therefore robbed these banks." Def. Mot. at 15. Instead, the government will prove beyond a reasonable doubt that the defendant committed the alleged offenses because there is overwhelming, admissible evidence in support of the allegations in the Indictment. Thus, the defendant has not met his heavy burden of showing substantial prejudice warranting severance of Counts One and Two.

Even if there were some prejudice, which Rule 8(a) authorizes, the defendant does not adequately explain why a less drastic measure, such as a limiting instruction—or some other relief in this Court's discretion—cannot ameliorate that purported prejudice. The defendant's underestimation of an EDNY jury's ability to follow limiting instructions is not shared by the Second Circuit. See Page, 657 F.3d at 130-1, 132 ("We reject [the defendant's] contention that a felon-in-possession charge must always be severed from other charges. Jones does not stand for that proposition.").[6] Like in Page, the Court here can ensure that there are safeguards protecting against the danger of substantial prejudice but maintaining efficiency and judicial economy.

Nor does the defendant's reference to United States v. Jones, 16 F.3d 487 (2d Cir. 1994)—which has an easily distinguishable procedural history—provide a sound basis for severance here. In Jones, the Second Circuit emphasized that the government added a felon in possession charge after a first trial in the same case resulted in a hung jury. The Second Circuit was dubious of the government's intention in doing so, stating that "[t]he ineluctable conclusion is that the government added the count solely to buttress its case on the other counts." Id. at 492.

---

[6] In Page, the Second Circuit held that the district court "took adequate precautions to limit the danger of unfair prejudice" when, among other precautions, the district court gave a "specific limiting instruction, telling the jury that it could consider the prior conviction only for the fact of its existence—the first element of the felon-in-possession charge—and not for any other purpose" and "specifically instructed the jury that it could not consider the prior conviction as proof that [the defendant] actually possessed the gun." Page, 657 F.3d at 130-31

In addition to these "indictment tactics," the Second Circuit also analyzed the limiting instruction given to the jury by the trial judge, which "repeatedly" reminded the jurors that the defendant was a convicted felon while simultaneously asking the jurors to put that consideration out of their minds. Id. at 492-3. Ultimately, in the second trial the defendant was convicted on the bank robbery charges, but was not convicted on the felon in possession charge.[7] The Second Circuit explicitly compared the results of the first trial to the second, and explained that there was an "irresistible inference" that the defendant suffered compelling prejudice "because of the improper submission of the unsupported felon in possession count." Id. at 493 (emphasis added). See also Page, 657 F.3d at 131 (articulating that while a defendant's reliance on Jones was understandable, the "unusual facts of the case render it distinguishable.").

But nothing in Jones stands for the proposition that a felon in possession charge must be severed from all other charges. See Page, 657 F.3d at 132 (We reject [the defendant's] contention that a felon-in-possession charge must always be severed from other charges. Jones does not stand for that proposition.) (emphasis in original). To create such a rule would yield absurd results. While severance or bifurcation is a remedy to counter the danger of prejudice when a felon in possession charge is joined with other charges, it is not the only remedy. In fact, the Second Circuit in Jones held that "some other effective ameliorative procedure" could neutralize any potential prejudice. Id. at 492. Such effective ameliorative procedures include "sanitized evidence of the conviction and [a] district court's limiting instruction minimiz[ing] the risk of prejudice." Page, 657 F.3d at 131 (finding that the defendant did not meet his "heavy burden" or

[7] The Second Circuit explained in Page that in Jones one of the issues was the "retroactive misjoinder" of the felon in possession charge. In Jones, "the jury learned of the defendant's prior conviction only because of the gun count, and yet the conviction on the gun count was reversed for failure of proof as to the interstate commerce element." Page, 657 F.3d at 132.

showing "substantial prejudice" from the joinder of narcotics counts with a felon in possession count, in light of the overwhelming evidence presented against him at trial). See also United States v. Jackson, No. 6:25-CR-06083 (FPG) (CDH), 2026 WL 482330, at *3 (W.D.N.Y. Feb. 20, 2026), objections overruled, No. 25-CR-6083-FPG-1, 2026 WL 1862005 (W.D.N.Y. June 29, 2026) (denying motion to sever felon in possession count); United States v. Robare, No. 8:07-CR-373 FJS, 2011 WL 10583565, at *8 (N.D.N.Y. Jan. 3, 2011), aff'd, 469 F. App'x 38 (2d Cir. 2012) (holding that the defense counsel's failure to make a motion to sever or bifurcate the felon in possession count did not constitute ineffective assistance of counsel because the defendant did not show that he was prejudiced by the limited introduction of evidence that he had been a convicted felon).

In sum, the defendant has not adequately articulated why the drastic remedy of severance is needed here. The close "logical connection" among the charges and the government's intention to provide a cohesive narrative regarding the defendant's four-day robbery spree renders any severance futile and would lead to two trials involving much of the same evidence. The Court can instead institute an ameliorative procedure—such as a limiting instruction—to deal with any potential prejudice. Thus, the defendant's motion to sever should be denied.

IV. The Defendant's Motion to Dismiss Count Five Should be Denied

The defendant moves to dismiss Count Five, claiming that 18 U.S.C. § 922(g)(1) is unconstitutional on its face and as applied to him. He also moves to dismiss Count Five on the basis that it exceeds Congress's Commerce Clause authority. As the defendant openly acknowledges, however, these arguments are foreclosed by binding Second Circuit precedent. See Zherka v. Bondi, 140 F.4th 68 (2d Cir. 2025); United States v. Santiago, 238 F.3d 213 (2d Cir. 2001) (per curiam). Therefore, these motions by the defendant, like his others, should be denied.

## CONCLUSION

For the reasons stated herein, the defendant's motions to dismiss, motion to suppress and motion to sever should each be denied, together with any other relief the Court deems just and proper.

Dated: Brooklyn, New York
August 17, 2026

Respectfully submitted,

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY

By: /s/
Assistant U.S. Attorneys
Joseph P. Klemme
Brachah Goykadosh
(718) 254-6017