UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X

UNITED STATES OF AMERICA, :

- against - : 26 CR 143 (MKB)

PIERRE LEE, :

Defendant. :

-----------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PIERRE LEE'S MOTIONS TO DISMISS, SUPPRESS EVIDENCE, AND FOR SEPARATE TRIALS**

Michael K. Schneider
Falon Rainer
FEDERAL DEFENDERS OF NEW YORK
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 11231
Tel.: (718) 330-1200
Email: michael_schneider@fd.org
falon_rainer@fd.org

*Attorneys for Defendant*

TO: JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, N.Y. 11201
By: Assistant U.S. Attorney Joseph P. Klemme
Assistant U.S. Attorney Brachah Goykadosh

CC: Clerk of the Court (by ECF)
Mr. Pierre Lee (by hand)

## INTRODUCTION

Pierre Lee has moved: 1) to dismiss Count Four of the indictment for failure to state an offense; 2) to suppress any statement allegedly made by him to law enforcement after his arrest on April 24, 2026; 3) for a separate trial for Counts One and Two; 4) to dismiss Count Five of the indictment; and 5) for such other and further relief as the Court may deem just and proper. (Dkt. No. 22.) The government's response ("Govt. Resp.") asks that each of Mr. Lee's motions be "summarily denied." (Dkt. No. 27 at 1.) For the reasons stated in Mr. Lee's initial filing and below, the Court should grant each of his requests.

## ARGUMENT

### I. Attempted bank robbery under 18 U.S.C. § 2113(a) is not a crime of violence and Count Four must be dismissed.

The government's opposition rests on a single textual premise: that because the phrase "by force and violence, or by intimidation" modifies "attempts to take," a conviction for attempted bank robbery "requires a showing of at least intimidation—that is, a threatened use of force—rather than merely an attempt to threaten." (Govt. Resp. at 10) (quoting *United States v. Smith*, 165 F.4th 751, 761 (3d Cir. 2026)). From that premise, the government reasons that *United States v. Taylor*, 596 U.S. 845 (2022), has nothing to say about § 2113(a), and that *Collier v. United States*, 989 F.3d 212 (2d Cir. 2021), survives intact.

The government's premise cannot be reconciled with fifty years of the Second Circuit's attempt jurisprudence. Since the 1970s, the Second Circuit has affirmed convictions for attempted bank robbery under § 2113(a) where the defendant never used force, never communicated a threat, and was arrested before any bank employee knew he existed. Those decisions remain the law of this Circuit, and they establish what the categorical approach asks: the "minimum conduct" punishable as attempted bank robbery does not include the use,

attempted use, or threatened use of physical force. *See United States v. Davis*, 74 F.4th 50, 53 (2d Cir. 2023). Under *Taylor*, that ends the inquiry.

### A. The Government's reading of § 2113(a) cannot be reconciled with *Jackson* and *Stallworth*.

In this Circuit, a criminal attempt has two elements: the defendant must have "(a) had the intent to commit the object crime and (b) engaged in conduct amounting to a substantial step towards its commission." *United States v. Farhane*, 634 F.3d 127, 145 (2d Cir. 2011). Attempted bank robbery is no exception. *United States v. Stallworth*, 543 F.2d 1038, 1040 (2d Cir. 1976).

The Circuit's foundational attempt decisions arose under this very statute, and they leave no doubt about what those two elements do—and do not—require. In *Stallworth*, the defendants reconnoitered a bank and were apprehended outside it, before any of them entered; the Circuit affirmed their convictions for attempted bank robbery, expressly rejecting the contention that attempt liability required them to enter the bank or confront its employees. 543 F.2d at 1040–41. In *United States v. Jackson*, 560 F.2d 112 (2d Cir. 1977), the defendants twice drove to a Brooklyn bank, armed and equipped to rob it, and were arrested outside the bank without ever entering it. No teller was confronted; no demand was made; no note was passed; no threat of any kind was communicated to any person. The Circuit affirmed their convictions for attempted bank robbery under § 2113(a). *Id.* at 118–21.

Under the government's strained reading of § 2113(a), those convictions could not stand. If an attempt conviction "requires a showing of at least intimidation—that is, a threatened use of force," (Govt. Resp. at 10), then a defendant arrested in the parking lot has committed no federal crime, because he has intimidated no one. Yet *Stallworth* and *Jackson* hold precisely the opposite, and every casing-the-bank arrest since has depended on them. The government cannot

ask this Court to adopt a construction of the statute under which a half-century of attempted bank robbery prosecutions turn out to be convictions without an underlying crime.

The government's grammatical observation does not close that gap. Even assuming the words "by force and violence, or by intimidation" modify "attempts to take," what the modifier does is identify the object of the attempt—the completed crime the defendant must have intended: a taking by force, violence, or intimidation. What it does not do, and cannot do, is convert an inchoate offense into a completed one by requiring proof that the intimidation actually occurred. That is why the *Jackson* defendants could be convicted of attempting to take money "by intimidation" from tellers they never met. The two essential elements remain intent and a substantial step; the adverbial phrase supplies only the content of the required intent.

Once that is recognized, *Taylor* controls. *Taylor* holds that an offense whose elements are (1) an intent to take property by actual or threatened force and (2) a substantial step toward that taking is not a crime of violence, because "whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." 596 U.S. at 851. The Court's hypothetical defendant, Adam—who plans a robbery, drafts a threatening note he intends as a bluff, and is arrested before he can deliver it—is "guilty of attempted robbery," yet he "did not 'use' physical force," "did not 'attempt' to use such force," and "never even got to the point of threatening the use of force against anyone or anything." *Id.* at 852. Adam is the *Jackson* defendant. Put him outside of a bank rather than a store and he is guilty of attempted bank robbery under settled Second Circuit law—without ever using, attempting to use, or threatening force. Section 2113(a) therefore "criminalizes . . . conduct that would not fall within the scope of . . . the force clause" and cannot serve as a § 924(c) predicate. *Davis*, 74 F.4th at 53 (quotation marks omitted).

The Circuit's own application of *Taylor* confirms the point. In *United States v. McCoy*, on remand from the Supreme Court, the Circuit vacated § 924(c) convictions predicated on attempted Hobbs Act robbery because proof that a defendant "intended to take property by force or threat and then took a substantial step to achieve that end . . . hypothetically could fall short of the use, attempted use, or threatened use of force against another person or his property." *United States v. McCoy,* 58 F.4th 72, 74 (2d Cir. 2023). The elements of attempted bank robbery in this Circuit are the same two elements. *Stallworth*, 543 F.2d at 1040. *McCoy*'s reasoning applies here.

Nor does the indictment's wording change the analysis. The government emphasizes that Count Three charges an attempt "by force, violence and intimidation." (Govt. Resp. at 7.) But the modified categorical approach permits a court to consult the indictment only to identify *which offense* is charged—here, attempted bank robbery rather than extortion—not to examine how the defendant allegedly committed it. *Mathis v. United States*, 579 U.S. 500, 505–06 (2016); *Taylor*, 596 U.S. at 850 ("[t]he only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force"). Even confined to the offense the government identifies, the categorical question remains whether every conviction for attempted bank robbery necessarily requires proof of the use, attempted use, or threatened use of force. *Jackson* and *Stallworth* answer that question: it does not.

### B. *Collier*'s formulation describes an offense that *Taylor* places outside the elements clause.

The government's block quotation from *Collier*, (Govt. Resp. at 11), illustrates the problem rather than solving it. *Collier*'s holding rests on this sentence: "In the context of § 2113(a), where attempt is defined as including an element of 'force and violence,' or

'intimidation,' there can be no question that conviction of attempt requires proof of *attempted* force or intimidation." 989 F.3d at 221 (emphasis added).

"Attempted . . . intimidation" is an attempted threat. In this Circuit, intimidation under § 2113(a) is conduct that "would create the impression in an ordinary person that resistance would be met by force"—that is, a threat of force. *United States v. Hendricks*, 921 F.3d 320, 328 (2d Cir. 2019). And *Taylor* squarely holds that an attempted threat lies outside § 924(c)(3)(A): the elements clause reaches the use, attempted use, and threatened use of physical force, and the Supreme Court rejected the government's effort to stretch that language to cover a defendant who merely attempted to threaten force but "never even got to the point of threatening the use of force." 596 U.S. at 851–52. On *Collier*'s own formulation, then, attempted bank robbery is an offense satisfied by proof of an attempted threat—exactly the conduct *Taylor* holds the elements clause does not reach.

*Collier*, decided fifteen months before *Taylor*, cannot be faulted for failing to anticipate that holding. But the consequence is that *Collier*'s stated rationale is the precise reasoning the Supreme Court has since rejected. This satisfies the very standard the government invokes: a district court may decline to follow circuit precedent where an intervening Supreme Court decision "so undermines it that it will almost inevitably be overruled." (Govt. Resp. at 8.(quoting *United States v. Diaz*, 122 F. Supp. 3d 165, 179 (S.D.N.Y. 2015)). Where the Supreme Court has held that intent plus a substantial step does not equal the use, attempted use, or threatened use of force, a circuit decision holding the opposite—for an attempt offense with identical elements—cannot survive. It is telling that the Second Circuit has not reaffirmed *Collier* in any precedential decision since *Taylor* was decided, and that its one precedential application of *Taylor* vacated the § 924(c) convictions before it. *McCoy*, 58 F.4th at 74.

**C. The government's out-of-circuit authorities establish only a division of authority.**

The government leans on *Vines*, *Armstrong*, and *Smith*. (Govt. Resp. at 9–10.) But *Vines* itself acknowledged that the "sister circuits are divided" on whether attempted bank robbery is a crime of violence. *United States v. Vines*, 134 F.4th 730, 735 (3d Cir. 2025). The Fourth Circuit has held for four decades that attempted bank robbery under § 2113(a) requires proof of neither force nor intimidation. *United States v. McFadden*, 739 F.2d 149, 151–52 (4th Cir. 1984). The Sixth Circuit has held, after *Taylor*, that attempted bank robbery is not a crime of violence under the elements clause. *Nicholson v. United States*, 78 F.4th 870 (6th Cir. 2023). The Ninth Circuit has reached the same conclusion. *United States v. Hogue*, No. 20-30043, 2023 WL 5973111, at *1 (9th Cir. Sept. 14, 2023). Indeed, the government has conceded to other courts that "the courts of appeals have disagreed over" how § 924(c) "applies to attempts" under the federal bank robbery statute. Gov't Br., *Hill v. United States*, 2025 WL 1769100, at *23 (6th Cir. June 20, 2025). This is not a landscape in which *Taylor*'s application to § 2113(a) can be dismissed as an idiosyncratic misreading; it is an acknowledged conflict in which the better-reasoned decisions, the ones that take attempt doctrine as it has existed for decades, are on Mr. Lee's side.

The government's remaining citations add nothing. By the government's own description, the Fourth Circuit in *Straite* "affirm[ed] on other grounds," (Govt. Resp. at 9), so the syntactic discussion the government quotes is nothing more than *dicta*—and *McFadden* remains that circuit's law. The pre-*Taylor* decisions collected at Govt. Resp. at 10 n.2 rest on the premise *Taylor* rejected: that attempting an offense containing a threat element necessarily entails a threat. And in *Randazzo*—the only in-district decision the government offers—the defendant is charged with a completed bank robbery, not an attempt. *See* No. 26-CR-74 (CBA), 2026 WL 2185552 (E.D.N.Y. July 24, 2026; Indictment, No. 26-CR-74 (CBA) Dkt. No. 8. That decision

addressed only the divisibility of § 2113(a)'s first paragraph; it did not address attempted bank robbery or confront *Stallworth*, *Jackson*, or the question whether *Taylor* abrogated *Collier*.

**D. The Court need not address the divisibility and *mens rea* arguments to decide this motion.**

Mr. Lee's remaining arguments require only brief reply. On divisibility: *Evans* expressly declined to decide whether bank extortion is a crime of violence, *United States v.* Evans, t924 F.3d 21, 28 (2d Cir. 2019), and neither *Evans* nor *Collier* performed the elements-versus-means analysis *Mathis* requires, 579 U.S. at 517–519. The two courts of appeals that have performed that analysis concluded that extortion is a means of committing a single offense, not a separate crime. *United States v. Burwell*, 122 F.4th 984, 989–90 (D.C. Cir. 2024); *United States v. Butler*, 949 F.3d 230, 234 (5th Cir. 2020). Mr. Lee maintains that argument for the reasons stated in his opening memorandum. On *mens rea*: Mr. Lee acknowledges that *Hendricks* forecloses his *Borden* argument in this Court, and he preserves it for further review.

Finally, there is nothing premature about resolving this question now. Whether the offense charged in Count Three is categorically a crime of violence is a pure question of law, and courts in this District have dismissed § 924(c) counts before trial on exactly this ground. *See, e.g.*, *United States v. Tucker*, 18 CR 119 (SJ), 2020 WL 93951 (E.D.N.Y. Jan. 8, 2020) (dismissing § 924(c) count predicated on attempted Hobbs Act robbery). Because no element of attempted bank robbery requires the government to prove the use, attempted use, or threatened use of physical force, Count Four fails to state an offense and must be dismissed. Fed. R. Crim. P. 12(b)(3)(B)(v).

**II. Mr. Lee's post-arrest statements to law enforcement must be suppressed. The government's own account establishes a violation of *Edwards v. Arizona.***

The government's opposition narrows this motion to a single question. The government does not dispute that Mr. Lee unequivocally invoked his right to counsel on April 24, 2026. It does not dispute that the officers, not Mr. Lee, initiated the May 1 exchange. It does not dispute that only seven days separated the invocation from the questioning, half the minimum period after which the protection of *Edwards v. Arizona*, 451 U.S. 477 (1981), can lapse. *See Maryland v. Shatzer*, 559 U.S. 98, 110 (2010). Indeed, the opposition never cites *Edwards* at all. Everything therefore turns on one proposition: that when Task Force Officer Bonacarti, a member of the team investigating Mr. Lee for bank robberies, seated himself beside the handcuffed Mr. Lee in the back of an FBI vehicle and asked him to explain "his deal," he was not interrogating him. On the government's own account of the facts, that proposition fails, and the statement must be suppressed.

**A. The government only contests interrogation; it offers no answer to the rule established by *Edwards*.**

Under *Edwards*, once an accused has "expressed his desire to deal with the police only through counsel," he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85. A later waiver "cannot be established by showing only that he responded to further police-initiated custodial interrogation." *Id.* at 484. The rule is not offense-specific: it applies even where the later questioning concerns a different investigation, *Arizona v. Roberson*, 486 U.S. 675, 682–83 (1988), and even where the

officers who conduct it do not know that the suspect ever asked for a lawyer, *id.* at 687–88. And the presumption endures unless the suspect has experienced a break in *Miranda* custody of at least fourteen days. *Shatzer*, 559 U.S. at 110. Mr. Lee invoked on April 24; Officer Bonacarti questioned him on May 1. Whether or not Mr. Lee's week of pretrial detention at Rikers Island counted as continuous custody—a question the Court need not decide—the fourteen-day clock had barely reached its midpoint.

The government responds to none of this. Its opposition proceeds as though this was an ordinary *Miranda* motion about an unwarned statement, rather than an *Edwards* motion about questioning that law enforcement initiated one week after a request for counsel. The only element of the violation the government contests is interrogation, so interrogation is all that remains to be decided. (The government likewise offers no response of any kind to Mr. Lee's Sixth Amendment argument, as to which Mr. Lee rests on his opening memorandum.)

**B. On the government's own facts, "What's Your Deal, Pal?" was interrogation.**

Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response," an inquiry that "focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Officer Bonacarti did not muse aloud in Mr. Lee's earshot; he directed an express, open-ended question at a man he had just informed was being charged with federal crimes, handcuffed and placed in the back of a car—inviting him to account for himself. Whatever room the case law leaves for greetings, pleasantries, and routine booking questions, it does not stretch to an investigator's request that a suspect—one week after that suspect asked for a lawyer—explain "his deal."

Consider what the government's own proffer establishes. The questioner was not a disinterested transport agent; he was a task force officer on the investigation, escorting Mr. Lee from Rikers Island to his presentment on a federal complaint charging him with attempted bank robbery. (Govt. Resp. at 14.) The officer asked the question, the government volunteers, "[i]n order to establish a rapport with the defendant." *Id.* Rapport-building is not an alternative to interrogation; it is how interrogations begin. *Cf. Innis*, 446 U.S. at 301 n.7 (where a police practice is "designed to elicit an incriminating response," it is "unlikely" the police would not also know it was reasonably likely to have that effect). And the setting supplied the question's meaning. To a handcuffed man being driven by federal agents to court to answer bank robbery charges, "What's your deal?" has one natural meaning: the situation he is in. Mr. Lee understood the question exactly as any suspect in his position would, and he answered it—in a single sentence, about the banks.

The government insists that this answer took Officer Bonacarti entirely by surprise—that he "had no reason to believe" the question would elicit what it elicited. (Govt. Resp. at 19.) The government's own narrative refutes that claim. By its account, the officer had to interrupt Mr. Lee mid-answer, instruct him not to discuss the crimes, and then explain what he had intended when he asked the question: where Mr. Lee was from, whether he had a family, where he grew up. (Govt. Resp. at 14.) An officer who must clarify, after the fact, that his question did not mean what the suspect took it to mean has conceded that the question, as asked, naturally invited the answer it received. And if Officer Bonacarti had genuinely wanted to know where Mr. Lee was from, or whether he had a family, those questions were available to him. He asked none of them. He asked, "What's your deal, pal?"

The government's authorities do not carry the weight placed on them; several undercut it. *Terry* and *Paredes* involved greetings ("What's up?" and "How are you?") of the kind exchanged in passing, not open-ended requests that a suspect give an account of himself. (Govt. Resp.at 18–20.) The "small talk" cases the government collects involve neutral chatter, and one of them states the limiting principle the government elides: an officer may make polite conversation "as long as the officer does not steer the conversation toward potentially incriminating topics." *Waybenais*, No. 12-244 (JRT/LIB) 2013 WL 1881566, at *1(D. Minn. May 6, 2013) (quoted at Govt. Resp. at 18). A task force officer's request that a bank robbery arrestee explain "his deal," during the drive to his initial appearance on those charges, steers the conversation in exactly one direction. That request satisfies any formulation of the *Innis* standard the government offers, including its own. Finally, the government's repeated description of the statement as "spontaneous" (Govt. Resp. at 2, 13) is difficult to credit. A statement made in direct answer to an express question is the opposite of spontaneous.

**C. The custody footnote refutes itself.**

The government suggests—in a footnote, where the suggestion surely belongs—that Mr. Lee may not have been in *Miranda* custody at all. (Govt. Resp. at 18–19 n.3.) The suggestion does not survive the first sentence of the government's own factual recitation: "the defendant was federally arrested at Rikers Island, handcuffed, and placed into the rear passenger seat of a Federal Bureau of Investigation ('FBI') vehicle." (Govt. Resp. at 14.) Custody exists where there is "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam). Mr. Lee was not merely subject to restraint of a degree *associated with* formal arrest; he was under formal arrest, in handcuffs, seated between the agents who had just arrested him.

*Howes v. Fields* does not help the government. *Howes* asked when the questioning of a sentenced prisoner, inside the prison where he lives, about matters unrelated to his conviction, amounts to *Miranda* custody. 565 U.S. 499, 508–09 (2012). Mr. Lee was not questioned "in prison" about some unrelated matter; he was freshly and formally arrested on the charges in this case and questioned during the ride to his presentment on them. The footnote's remaining observation—that Mr. Lee "had been in state custody for approximately one week" and so "it cannot be said that he was in 'custody' indefinitely" (Govt. Resp. at 18–19 n.3)—conflates two doctrines. Whether pretrial detention constitutes continuous *Miranda* custody bears on how long the *Edwards* presumption endures; it says nothing about whether a man handcuffed in the back of an FBI car is in custody when questioned there. And even on its own terms, the observation goes nowhere: a break in custody dissolves *Edwards* protection only after fourteen days. *Shatzer*, 559 U.S. at 110. Seven is not fourteen.

**D. Suppression should be granted on the government's own proffer. Alternatively, a hearing is required.**

The government closes by faulting Mr. Lee for the absence of a factual dispute, arguing that no hearing is warranted because "the defendant does not dispute any of the facts." (Govt. Resp. at 20.) The government cannot have it both ways. If the material facts are undisputed—the April 24 invocation, the police-initiated May 1 encounter, the express question, the responsive statement—then this motion presents a pure question of law, and on the government's own proffer the Court must suppress. If instead the government means to contest any fact material to the motion, then a hearing is required for precisely that reason. *See United States v. Watson*, 404 F.3d 163, 167 (2d Cir. 2005); *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992). Mr. Lee notes, in this regard, that the government's factual narrative—Officer Bonacarti's purpose, his mid-answer intervention, his after-the-fact explanations—appears nowhere in a sworn record. It

is an unsworn proffer of counsel. If the Court is inclined to rely on that narrative for any purpose, Mr. Lee is entitled to test it under oath.

Because the government's own account establishes that law enforcement initiated custodial interrogation of Mr. Lee one week after he invoked his right to counsel, any statements he made in response must be suppressed. *Edwards*, 451 U.S. at 484–85. In the alternative, the Court should hold an evidentiary hearing.

**III. The Court should sever Counts One and Two or, at a minimum, bifurcate the trial of Count Five.**

Mr. Lee does not ask this Court to hold that a felon-in-possession count "must always be severed from other charges" — the per-se rule *Page* rejected. *United States v. Page*, 657 F.3d 126, 132 (2d Cir. 2011). The question under Rule 14(a) is case-specific: whether two categories of proof that are elements of Counts Four and Five alone (possession of a firearm and a prior felony conviction) will contaminate the jury's evaluation of two earlier incidents in which, the government concedes, no weapon was displayed, brandished, or recovered.

The government's principal answer is that the gun evidence "pervades this case and will be relevant to at least the April 21 robbery charge." (Govt. Resp. at 24.) That assertion is offered without explanation, and none exists. A firearm recovered from a bag on April 24 is not evidence that Mr. Lee possessed it on April 21 or 22. The government says only that it "intends to elicit evidence" from which the jury could "infer" that he was armed during "at least one" of the earlier incidents (Govt. Resp. at 24), the very inference contested in the pending motions *in limine*, *see* Dkt. No. 23. A severance motion cannot be defeated by assuming the government will prevail in an evidentiary dispute the Court has not yet resolved. If the April 24 firearm is inadmissible on Counts One and Two, as it is, then joinder accomplishes exactly what Rule 14 was adopted to prevent: it puts before the jury, on those counts, evidence it would never otherwise hear. The

government's response on the prior conviction is the same cross-reference to its *in limine* motion, (Govt. Resp. at 24 n.5), and it offers no response at all to the point that *Rehaif* enlarges the volume of status evidence the jury will hear. *See Rehaif v. United States*, 588 U.S. 225 (2019).

The government next promises that it "will not violate Rule 404(b)" by arguing propensity. (Govt. Resp. at 24–25). But *Jones* does not turn on what the prosecutor argues in summation; it turns on what the jury will do with what it has heard. *United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994). The syllogism — armed man, convicted felon, therefore bank robber — assembles itself without the government's help. Nor is that narrative one Mr. Lee "himself has constructed," (Govt. Resp. at 24); it is the inference the proffered evidence invites, which is why Rule 404(b)(1) exists.

Finally, the government invokes *Zafiro*'s preference for measures "less drastic" than severance, (Govt. Resp. at 23), but never engages the obvious one: bifurcation of Count Five, with the prior conviction established by stipulation under *Old Chief v. United States*, 519 U.S. 172 (1997), and tried to the same jury in a brief second phase after verdicts on Counts One through Four. *See Zafiro v. United States,* 506 U.S. 534 (1993).re That is precisely the "other effective ameliorative procedure" *Jones* contemplates. 16 F.3d at 492 (quoted at Govt. Resp. at Ar26). It costs nothing: one jury, one trial, no duplicated evidence. It differs from the government's proposal in a single respect — the jury deciding whether Mr. Lee is the unidentified man on the April 21 and 22 surveillance footage would not know he is a convicted felon. The government's unwillingness to accept that costless fix is telling. The conviction's only value to the government on the joined counts is the propensity inference it disclaims.

Accordingly, the Court should sever Counts One and Two from Counts Three, Four, and Five. At a minimum, it should bifurcate Count Five and accept an *Old Chief* stipulation to the prior-conviction element.

**IV. Count Five**

Mr. Lee moved to dismiss Count Five on grounds he acknowledged are foreclosed by *Zherka* and *Santiago*, to preserve them. The government agrees they are foreclosed. (Govt. Resp. at 27.) No further reply is required.

**CONCLUSION**

For the foregoing reasons and those stated in his opening memorandum, Mr. Lee respectfully requests that the Court dismiss Count Four; suppress his post-arrest statements or order an evidentiary hearing; sever Counts One and Two or bifurcate Count Five; and dismiss Count Five.

DATED: August 19, 2026

Respectfully submitted,
FEDERAL DEFENDERS OF NEW YORK

*s/ Michael K. Schneider*
*s/ Falon Rainer*

MICHAEL K. SCHNEIDER
FALON RAINER
Assistant Federal Defenders
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel.: (718) 330-1200
Email: michael_schneider@fd.org
falon_rainer@fd.org