**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DCP:JPK/BG
F. #2026R00307

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 1, 2026

By ECF
The Honorable Margo K. Brodie
Chief United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Pierre Lee,
Criminal Docket No. 26-143 (MKB)

Dear Judge Brodie:

The government respectfully submits this letter in response to the Court's request for additional materials related to the government's motions in limine during the September 1, 2026 conference. See ECF No. 23.

I. Body Worn Camera Footage

A. Transpiring Events

The government will seek to admit body-worn camera footage from officers who responded to the April 24, 2026 attempted bank robbery in Bensonhurst, Brooklyn. For some of the body-worn camera footage, the purpose of admitting this evidence is only to show the events as they transpired that day—not to introduce out of court statements for their truth. For example, the government anticipates moving to admit body-worn camera footage showing the defendant leaving a Manhattan-bound D Train in an effort to avoid law enforcement; as well as body-worn camera footage of police officers pulling the gun out of the defendant's bag during an inventory search at the police precinct following his arrest. There is no hearsay issue with respect to such usage, and the government will aim to reach a stipulation as to the authenticity of such body-worn camera footage. See GX 504 at 7:20 to 7:31; GX 500 at 19:40 to 19:50.

B. Defendant's Statements

Some of the body-worn camera footage contains statements made by the defendant, which are not hearsay for the reasons referenced in the government's motions in limine. See Fed. R. Evid. 801(d)(2)(A). During its case-in-chief, the government anticipates introducing statements made by the defendant during a search of his belongings outside the

Capital One Bank and later at the police precinct. Some of these statements were made in response to basic pedigree and property-related questions; others were spontaneously made by the defendant. See Rosa v. McCray, 396 F.3d 210, 221 (2d Cir. 2005) ("[t]he collection of biographical or pedigree information through a law enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest . . . does not ordinarily implicate the prophylactic protections of Miranda, which are designed to protect a suspect only during investigative custodial interrogation.").[1] The statements can be reviewed in proposed government exhibit GX 500 at the following time stamps:

- Search Outside Capital One Bank: the defendant's statements during this search, including his statement that the approximately $1,200 found in his pocket was "my money," may be viewed at the 6:10 to 8:41 mark of the video.

- Search Inside Precinct: the defendant's statements claiming ownership of approximately $1,200, a SoFi bank card, and an identification card, and his statement that he is homeless, are not hearsay statements and may be viewed at the 18:45 to 20:42 minute mark of the video.

While the government anticipates potentially introducing the particular statements identified herein, all of the statements made by the defendant during these searches are non-hearsay statements, and the defense has not articulated a justifiable basis to suppress or preclude these statements. Accordingly, the government reserves the right to introduce additional statements from these searches should their relevancy become apparent as the trial unfolds.

C. Other Statements

In its motions in limine, the government anticipated offering statements captured in body-worn camera footage regarding the identification of the defendant (the "Identification BWC"), statements officers made upon pulling the firearm out of the defendant's bag (the "Firearm BWC"), and statements made by bank employees during interviews following the attempted bank robbery (the "Interview BWC").

In light of the defendant's plea of guilty to the bank robbery counts, the government does not currently anticipate introducing the Identification BWC and the Interview BWC. However, the government reserves the right to introduce this evidence should the defense attempt to attack the integrity of the identification or the police's investigation, or otherwise put the employee's statements at issue.

Regarding the Firearm BWC, the government will seek to introduce the statement Officer Minster made when the firearm was taken out of the bag, where the officer says, "Whoa," in reaction to seeing it. That statement can be viewed at GX 500 at the 19:40 to 19:50

---

[1] The government will provide each of the exhibits referenced herein to the Court and defense counsel under separate cover this evening and will provide the balance of its proposed exhibits tomorrow

mark. Similarly, the government will seek to introduce the statement of Officer Reyes (who is standing to Officer Minster's left in the body-worn camera footage) after taking the firearm out of the bag. Specifically, the government will seek to introduce Officer Reyes's statement, "that was in the bag; not on his person, was in the bag." That statement can be viewed at GX 500 at the 19:45 to 19:52 mark. These statements are plainly present sense impressions or excited utterances, and not hearsay, for the reasons stated in the government's motions in limine. See ECF No. 23 at 18-20.

## II. Jail Calls

The government anticipates admitting into evidence a portion of a recorded jail call from June 6, 2026. During the jail call, the defendant admits that the gun is his, that he purchased it, and that he "never pulled it out on anybody I just handed a note." The relevant statement can be heard at proposed government exhibit GX 800 at 2:30 to 3:24 minutes. A draft transcript of the defendant's statement from the call is provided below:

> CALLER: What's the charges?
> DEFENDANT: Robbery one and possession of a firearm.
> CALLER: So they did charge you with possession of a firearm?
> DEFENDANT: Yeah, but I got that one beat; I just got to beat the robbery one, that's it.
> CALLER: OK.
> DEFENDANT: I got the bill of sale for the gun and all that. I already produced that. So they can't really say nothing, too much on that.
> CALLER: For the bill of sale, it was your gun?
> DEFENDANT: Yeah, hell yeah, it was mine. I bought that shit legitly; everything was legit on that. And one it was never used in the case, so. I never pulled it out on anybody I just handed a note.

The government anticipates that the parties will be able to stipulate as to the authenticity of the defendant's jail call.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Joseph P. Klemme
Brachah Goykadosh
Assistant U.S. Attorney
(718) 254-6017/6237

Enclosures (by E-mail only)

cc: Clerk of Court (MKB) (by ECF and E-mail)
Michael Schneider, Esq. (by ECF and E-mail)
Falon Rainer, Esq. (by ECF and E-mail)