**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DCP:JPK/BG
F. #2026R00307

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 4, 2026

By ECF
The Honorable Margo K. Brodie
Chief United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Pierre Lee,
Criminal Docket No. 26-143 (MKB)

Dear Judge Brodie:

The government respectfully submits this letter in response to the Court's statements during the September 2, 2026, pretrial conference regarding the admissibility of evidence from the April 21 and April 22, 2026 robbery and attempted bank robbery committed by the defendant.

During the September 2, 2026 conference, the defense referred to the evidence of the other bank robberies as improper propensity evidence under Rule 404(b). That is not correct under Second Circuit case law. As the Second Circuit long-ago held, "'evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.'" See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000) (emphasis added).

Here, the evidence of the other bank robberies is plainly part of the same "series of transactions as the charged offense." Id. The defense cannot argue otherwise. The robberies could not be more similar: they occurred at approximately the same time, with the defendant not wearing a mask, using a note that he passed to the teller saying he was armed. And they all occurred within four-day window. The government is not seeking to connect loosely affiliated crimes across a substantial period of time. This was a robbery spree that occurred in less than a week.

The evidence from the other robberies is also inextricably intertwined with and necessary to complete the story of the April 24, 2026 attempted robbery. The testimony at trial will establish that the New York City Police Department believed that the prior robberies may have been committed by the same person, and took investigative actions based on that understanding. For example, Officer Dawkins will testify that when he got to the April 24 bank

robbery call, the reason he went to the Bay Parkway subway station was because he thought the attempted robber would be trying to flee by subway. And critically, Officer Dawkins did that because he knew that the perpetrator of the April 22 Citizens Bank attempted robbery—which was committed by the defendant only a few blocks away days earlier—had fled by foot and not by automobile. The Court's contemplated order would preclude Officer Dawkins from providing the accurate explanation for his actions, which would prevent the jury from learning the complete and coherent narrative of what happened on April 24. Other law enforcement witnesses would similarly testify that actions they took in pursuing or investigating the defendant's conduct were based on information obtained from the prior robberies. For example, the body-worn camera that footage of the defendant's arrest, <u>which both parties want to submit into evidence</u>, contains statements by the officers concerning the April 22 Citizens Bank attempted robbery.

Similarly, the Court's contemplated position would preclude the government from providing evidence of the large sum of money (over $1,200) recovered from the defendant following his arrest. That money, which the government will argue was from the first robbery, is placed on the counter immediately prior to NYPD officers removing the firearm from his bag. Indeed, the large pile of cash is front and center during the portion of the body-camera footage showing the officers removing the gun, which the government intends to play. The money is inextricably intertwined with the evidence in this case. Depriving the government of the ability to explain where that money came from will confuse the jury and permit them to speculate as to where it originated. This concern is particularly acute since the government will present evidence that the defendant told NYPD officers he was homeless, which will further cause the jury to speculate as to where he got $1,200 in cash. Permitting the jury to speculate as to where the defendant obtained the contents of his bag—an issue that is central to this case—is extremely prejudicial to the government.

Nor is this evidence too prejudicial to be admitted under Rule 403. It is foundational that where, as here, the proffered evidence does "not involve conduct any more sensational or disturbing" than the offenses charged, there is no risk of unfair prejudice as to the proffered evidence. <u>See</u> <u>United States v. Pitre</u>, 960 F.2d 1112, 1120 (2d Cir. 1992); <u>accord</u> <u>United States v. Livoti</u>, 196 F.3d 322, 326 (2d Cir. 1999) (evidence of uncharged acts not unfairly prejudicial when it does not involve conduct "more inflammatory than the charged crime"). The robberies are all the same; the defendant allocuted to that fact on September 1 during the change of plea hearing. There is nothing about the April 21 and April 22 robbery and attempted robbery that would inflame the jury with respect to the April 24 attempted robbery because the defendant's conduct was the same for each of them.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/
Joseph P. Klemme
Brachah Goykadosh
Assistant U.S. Attorney
(718) 254-6017/6237

cc: Clerk of Court (MKB) (by ECF and E-mail)
Michael Schneider, Esq. (by ECF and E-mail)
Falon Rainer, Esq. (by ECF and E-mail)